Stewart, J.
The first question for our consideration is whether defendant was entitled to a judgment in the trial court as a matter of law or whether the question of defendant’s alleged negligence and the contributory negligence and assumption of risk upon the part of plaintiff constituted questions of fact to be determined by the jury.
Defendant contends that there was an absence of showing of causal connection between its claimed negligence and plaintiff’s injuries for the reason that even if defendant were guilty of negligence in not erecting protection along the side of the arena in conformity with the practice of some arena proprietors, the record discloses that it was not the practice to erect screens in front of the bench occupied by the players; that the puck which struck plaintiff emerged suddenly from *231 play at a point about 25 feet distant from where he was sitting; and that the flight of the puck must have been over the bench occupied by the players, which it would not be the custom to screen under any circumstances.
The effect of evidence as to customary methods of protection was considered by this court in the case of Ault v. Hall, 119 Ohio St., 422, 164 N. E., 518, 60 A. L. R., 128. Paragraphs three and four of the syllabus in that case read as follows:
“3. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.
“4. Methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact.”
In furthér answer to this claim of defendant it is to be observed that no warning signs were displayed or no warning announcements were made at the arena concerning the danger of flying pucks, and of course that made a factual question as to negligence.
The main contention of defendant is that plaintiff as a matter of law assumed the risk of his injury, and that question was preserved not only by defendant’s various motions but likewise by means of two written requests for special charges to the jury submitted to the court before argument, which requests were denied by the court. The charges read:
“1. While the proprietors of sports arenas are required under the law to exercise ordinary care for the safety of patrons, they are not the insurers of the *232 safety of patrons. When the sport is one which in the normal course involves some hazards to the spectators, the patrons attending such sports events assume the risk of such hazards as are normally inherent in the sport. ^
“3. The court further charges you as a matter of law that as far as screening the spectators’ stand is concerned, due care on the part of the arena management does not require that all of the spectators be screened in; the management performs its duty toward the spectators when it provides screened seats in the stands and gives spectators the opportunity of occupying them.”
These two charges involve the application to this case of the standard of care which has generally been established by the courts as applicable to the proprietors of baseball parks, and our problem is whether the so-called baseball rule is applicable to a hockey game.
By the great weight of authority it is not necessary for the owner or proprietor of a baseball park to provide screened seats for all who attend the game. Brisson v. Minneapolis Baseball & Athletic Assn., 185 Minn., 507, 240 N. W., 903; Quinn, a Minor, v. Recreation Park Assn., 3 Cal. (2d), 725, 46 P. (2d), 144; annotation, 142 A. L. R., 868.
The rule was stated by Judge Allen as obiter in the case of the Cincinnati Baseball Club Co. v. Eno, 112 Ohio St., 175, 147 N. E., 86, as follows:
“It is the general rule, also, so far as screening the grandstand is concerned, that due care on the part of the management does not require all of the spectators to be screened in; that the management performs its duty toward the spectators when it provides screened seats in the grandstand and gives spectators the op *233 portunity of occupying them. The record shows that in the instant case the management had performed this duty.
“We concur in the soundness of the views expressed in the above cases with regard to injuries incurred by balls thrown or batted during the course of a baseball game.”
The baseball rule is bottomed upon the postulate that the risks of batted and flying balls are so obvious that they must be perceived and known by those who attend the game, and, therefore, such risks are assumed as a matter of law by such persons.
The rule has also been applied to other sports and the participants therein. In 4 Shearman and Redfield on Negligence (Rev. Ed.), 1566, Section 647, it is stated:
“One who participates in the diversion afforded by an amusement device accepts the dangers that inhere in it so far as they are obvious and necessary. The same is true of one who participates in other sports or pastimes, ‘just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball.’ ”
See, also, Englehardt, a Minor, v. Philipps, d. b. a. Philipps Swimming Pools, 136 Ohio St., 73, 23 N. E. (2d), 829, in which this court held:
“* * * it may be assumed that a person of whatever age is able to appreciate the obvious risks incident to any sport or activity in which he may be able to engage with intelligence and proficiency, and must act accordingly.”
The baseball rule has never been applied by this court. The Eno case, supra, from which we have quoted Judge Allen’s obiter, was concerned with the right of recovery by a spectator at a game who was struck by a ball batted in practice by the players near *234 the spectators’ seats, between two games of a doubleheader, and in that case this court held:
“2. Whether the management of a baseball club company, in permitting practicing by its baseball team in close proximity to the unscreened section of the grandstand between the two games of a ‘doubleheader, ’ is guilty of negligence, or whether a spectator sitting in the unscreened portion of the grandstand at the time of the practicing is guilty of contributory negligence, is a question of fact for the jury.” See, also, Allon v. Park Central Hotel Co., Inc., 272 N. Y., 631, 5 N. E. (2d), 366 (swimmer in a pool struck by a person diving from a diving board allowed recovery); and Thomas v. Saratoga Assn., 252 N. Y., 529,170 N. E., 131, and Kennedy v. Union Agricultural Society, 270 N. Y., 558, 200 N. E., 317 (patrons at race track allowed recovery for injuries, suffered when struck by racers).
Assuming but not deciding the baseball rule to be the law in Ohio, we come to the question whether that rule should be applied to hockey games. Authorities outside Ohio are divided upon that question.
In Shanney v. Boston Madison Square Garden Corp., 296 Mass., 168, 5 N. E. (2d), 1, the court considered the case of a plaintiff injured by a flying puck while attending a hockey game as a spectator. It was argued by the defendant in that case that “the danger of a ‘puck’ flying out among the spectators at a hockey game is inherent in the nature of the sport itself, and practically unavoidable, that persons attending such a game must be presumed to know where they are going, and that the risk is in effect an obvious one which the patron must be held to have assumed.”
After describing the game the reviewing court held that the lower court rightly refused to rule, as a matter of law, that the risk was obvious; and that under the *235 facts a jury question was presented. The evidence disclosing that the plaintiff was attending her first game, there was no presumption that she knew and appreciated the risk, for it cannot fairly be said that ice hockey contests are such familiar experiences in life that all persons can be expected to understand incidental risks therein which are not visually apparent.
In the case of Lemoine v. Springfield Hockey Assn., Inc., 307 Mass., 102, 29 N. E. (2d), 716, the court considered the legal rights of a patron attending a hockey game. In that case the patron, while proceeding along an aisle to a rest room, was injured by a flying puck. The defense was made that the patron had assumed the risk, and the evidence showed that he had gone to hockey games for three or four years. The court held that whether, from his previous knowledge, the plaintiff acted reasonably in using the promenade in going to the rest room, whether he should have waited until there was an interruption of the game, and whether passing along the aisle he subjected himself to an unreasonable risk were all questions of fact.
James v. R. I. Auditorium, Inc., 60 R. I., 405, 199 A., 293, was concerned with a plaintiff who was injured by a flying puck while a spectator at a hockey game. The court, in upholding the trial court’s overruling of defendant’s motion for a directed verdict, reviewed the authorities and held that because of the nature of the game it could not find that the average person has a knowledge of the risks incident to hockey similar to that as to baseball, as the games are fundamentally different.
In that case the court found that the evidence demonstrated that the defendant knew, and that the plaintiff did not know, that a spectator while seated in the unscreened portion of the rink ran the risk of being *236 hit by a flying puck, and in view of the general nature of the game and the fact that the risk was not an obvious one there was (no warrant to presume that the plaintiff should have appreciated the risk as a matter of common knowledge)
Tite v. Omaha Coliseum Corp., 144 Neb., 22, 12 N. W. (2d), 90, 149 A. L. R., 1164, is a case which was concerned with a plaintiff struck by a flying puck, while occupying a seat directly behind the sideboards surrounding the rink.
In paragraphs four, five, six and seven of the syllabus it is said:
“4. A spectator at a hockey game assumes the risk of such dangers as are incident to the playing of the game» of which he had knowledge or which should have been obvious and apparent to a reasonable and prudent person under the circumstances.
“5. A spectator at a game of hockey must exercise due care in protecting himself against known dangers or such dangers as should be known and appreciated by a reasonable person in the exercise of due care.
“6. The manner of the construction of a hockey arena,- and the dangers incident to the spectators attending a game of hockey are not so general as to be matters of common knowledge.
“7. A spectator at a hockey game who voluntarily places himself in a box seat not protected by a screen does not as a matter of law assume the risk of being hit by a flying puck from the playing arena.” See, also, Uline Ice, Inc., v. Sullivan, 187 F. (2d), 82.
The Supreme Court of Minnesota has taken a view contrary to the decisions in the foregoing cases. In Modec v. City of Eveleth, 224 Minn., 556, 563, 29 N. W. (2d), 453, it was held:
“Hockey is played to such an extent in this region *237 and its risks are so well known to the general public that as to the question before us there is no difference in fact between the two games so far as liability for flying baseballs and pucks is involved.”
Lower courts in New York have also held that a spectator at a hockey game assumes the risk of injury because of the nature of the game. Hammel v. Madison Square Garden Corp., 279 N. Y. Supp., 815; and Ingersoll v. Onondaga Hockey Club, Inc., 281 N. Y. Supp., 505.
The Canadian courts have likewise held that a spectator at a hockey game assumes the risk of injury by a flying puck. Elliott v. Amphitheater, Ltd. (Manitoba), 3 Western Weekly Reports, 225; Mlle. Gervais v. Canadian Arena Co., 74 Rapports Judiciares de Quebec, C. S., 389.
In the Canadian cases, the plaintiffs had attended hockey games before.
In the Elliott case the plaintiff himself was a hockey player.
We are of the opinion that, so far as Ohio is concerned, we should apply the rule as enunciated in the Massachusetts, Rhode Island, Nebraska and federal cases, particularly with reference to a paying patron at a hockey game who has no previous knowledge of the game or of the dangers incident thereto.
There is sound reasoning for the baseball rule. Baseball is the national pastime of the United States. Not only is the game familiar to almost everyone in this nation but the danger from baseballs flying through the air is obvious and patent to anyone sitting as a spectator at a baseball game. The players are far removed from the spectators, the balls as they are hit are easily discernible as they go on their course, and it would be difficult to imagine that anyone in the *238 seats at a game could fail to instantaneously perceive the danger of being struck by a baseball which was being propelled into the stands.
In a hockey game, on the contrary, the danger of a flying puck would not necessarily be obvious to a spectator who had never seen one. The arena is very much smaller than a baseball diamond, the standard arena being 200 by 85 feet. The object of the game is not to knock the pucks into the air but to slide them along the ice.
It is argued that the ends of the arena were screened and that a patron might sit behind that screen. In the present case, however, the plaintiff had an unscreened reserved seat to which he had been escorted, and no warning had been given him as to the danger of flying pucks.
It is argued that it would be unreasonable to put upon the defendant the duty of warning each patron as he went into the arena, but, conceding that, a warning could have been given either by signs or announcements over a public address system.
Although hockey is becoming ever more popular, it is not nearly so universally played as is baseball and, as we have pointed out, its dangers are certainly not so obvious to a stranger to the game as would be the clangers incident to baseball.
We are of the opinion that the plaintiff did not, as a matter of law, assume the risk to which he was exposed at the time of his injury, and that, in the absence of any knowledge on his part of that risk, defendant was not entitled to an instructed verdict or to a judgment notwithstanding the verdict.
It is apparent, from the conclusion to which we have come, that the trial court was not in error in refusing defendant’s special charges numbers one and three.
Defendant argues that in the general charge of the *239 court there was error with reference to the questions of assumption of risk and. contributory negligence.
The portion of the charge to which specific objection is directed is:
“Now, what is the assumption, what does a man assume when he goes to a game of this kind? It is said by the law that a person who knows, appreciates, and then exposes himself to a danger, assumes the risk thereof. One cannot deliberately incur the obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger for the ensuing injury.
“The plaintiff assumed the risk and the danger by remaining at the game after he knew, if you find that he did know of said dangers; that he was negligent, which negligence contributed to his own injury.
“ As I say, the burden is upon the defendant to prove that, because they in their answer set up the facts which, if they prove the allegation, or the defense that they set up, it would bar the plaintiff from obtaining recourse in this case — from obtaining a verdict at your hands.
“That being the case, the burden is upon the defendant to prove that the plaintiff, Morris, assumed the risk and the danger, or that he was negligent in any way. If they prove by a preponderance of the evidence that Mr. Morris knew and appreciated the dangers, and then deliberately exposed himself to said dangers, or remained where he was exposed to said dangers, if the defendant proves that by a preponderance of the evidence, then the plaintiff has assumed the risk, and he may not recover.
“If the facts shown by the evidence offered by the defendant, or by the plaintiff, if from all the evidence you find that the plaintiff was negligent, and that is proven by a preponderance of the evidence, and that *240 said negligence of his in remaining on the premises after he knew the full situation, if that caused or contributed to his injury, then your verdict must be for the defendant.
“In other words, the plaintiff must prove that this injury which he received was received entirely through the negligence of the defendant, or the team which it owned or managed, and that said negligence was the proximate cause of the injury which he received.”
It is argued by defendant that the foregoing excerpt from the general charge did not carefully distinguish between the rules of law pertaining to the doctrine of assumption of risk and the rules of law governing the application of the defense of contributory negligence, and that the court commingled its charge with respect to these two defenses.
Assumption of risk is a matter of knowledge of a danger and intelligent acquiescence in it, and to the extent that this can be found recovery will be denied, whereas contributory negligence is some fault or departure from the standard of reasonable conduct. The two may coexist or either may exist without the other. The difference is one between risks which are in fact known to the plaintiff or which are so obvious that he must be taken to have known them and risks which he might have discovered by the exercise of ordinary care. See Masters v. New York Central Rd. Co., 147 Ohio St., 293, 70 N. E. (2d), 898.
It is argued that the trial court in the present case not only commingled its instructions with reference to assumed risk and contributory negligence but confined the jury to the question that plaintiff must have known, appreciated, and deliberately exposed himself to the dangers of the hockey game, leaving out the fact that he would be guilty of contributory negli *241 gence if he knew or, in the exercise of ordinary care, should have known of the risk.
An examination of the entire charge of the trial court discloses both the correct definition of negligence and a proper definition of assumption of risk. Where contributory negligence is used in the charge it must necessarily refer to negligence as theretofore defined by the court, and in the absence of any request for a further charge by defendant’s counsel at the trial and considering the entire charge, we do not find that any error prejudicial to defendant intervened.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, -C. J., Zimmerman, Middleton, Taet, Matthias and Hart, JJ., concur.