Taft, J.
 

 In support of the judgment of reversal by the Court of Appeals, plaintiffs first contend that the trial court erred in (a) failing to charge the jury on the doctrine of
 
 res ipsa loquitur,
 
 (b) refusing to give
 
 *505
 
 plaintiffs’ requested instruction No. 5 relating to
 
 res ipsa loquitur,
 
 and (c) giving defendants’ special request to charge No. 6, which eliminated the doctrine of
 
 res ipsa loquitur
 
 from the case.
 

 Therefore, the first question to be considered is whether the so-called doctrine of
 
 res ipsa loquitur
 
 applied to the facts disclosed by the evidence in this case.
 

 A recent definition of the doctrine is found in paragraph two of the syllabus in
 
 Fink
 
 v.
 
 New York Central Rd. Co.,
 
 144 Ohio St., 1, 56 N. E. (2d), 456, which reads:
 

 “In Ohio the rule of
 
 res ipsa loquitur
 
 is not a rule of substantive law but is a rule of evidence which permits the jury,
 
 but not the court %n a jury
 
 trial, to draw an
 
 inference
 
 of negligence where the instrumentality causing the injury was under the exclusive management and control of the defendant and the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary cáre had been observed.”
 

 However, as stated by Weygandt, C. J., in the court’s opinion in
 
 Hiell
 
 v.
 
 Golco Oil Co.,
 
 137 Ohio St., 180, at page 182, 28 N. E. (2d), 561, “the mere statement of the rule is as usual less difficult than its application.”
 

 It is usually relatively simple to determine whether “the instrumentality causing the injury was under the exclusive management and control of the defendant.” Most of the cases, in which this court has held that the doctrine was not applicable, have been decided on the ground that the instrumentality was not under the exclusive management and control of the defendant. See
 
 City of Cleveland
 
 v.
 
 Pine,
 
 123 Ohio St., 578, 176 N. E., 229, 74 A. L. R., 1224;
 
 St. Marys Gas Co.
 
 v.
 
 Brodbeck, Admr.,
 
 114 Ohio St., 423, 151 N. E., 323;
 
 Thomas
 
 v.
 
 Youngstown Municipal Ry. Co.,
 
 122 Ohio
 
 *506
 
 St., 610, 174 N. E., 252;
 
 City of Cleveland
 
 v.
 
 Amato,
 
 123 Ohio St., 575, 176 N. E., 227;
 
 Sherlock
 
 v.
 
 Strouss-Hirshberg Co.,
 
 132 Ohio St., 35, 4 N. E. (2d), 912;
 
 Renneckar
 
 v.
 
 Canton Terminal Restaurant, Inc.,
 
 148 Ohio St., 119, 73 N. E. (2d), 498.
 

 The difficulty in determining the applicability of the doctrine arises where the instrumentality causing the injury is under the exclusive management and control of the defendant and the court is then called upon to determine the question whether “the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.”
 

 In determining that question, some help can be obtained from considering what this court has decided with regard to other accidents under other circumstances.
 

 The term
 
 “res ipsa
 
 loquitur” was first mentioned by this court in
 
 Cincinnati Traction Co. v. Holzenkamp,
 
 74 Ohio St., 379, at page 384, 78 N. E., 529, 113 Am. St. Rep., 980, decided in 1906. Apparently, the term first appeared in a reported decision in
 
 Byrne
 
 v.
 
 Boadle,
 
 2 H. & C., 722, 159 Eng. Rep. R., 299, decided in 1863, but did not come into use in the courts of the United States until the early 1900s, although its use thereafter spread quite rapidly. See 9 Wigmore on Evidence (3 Ed.), 377 and 378.
 

 However, the doctrine of
 
 res ipsa loquitur
 
 had, in effect, been applied by this court without naming it in
 
 Iron Rd. Co.
 
 v.
 
 Mowery,
 
 36 Ohio St., 418, 38 Am. Rep., 597, where an injury was received through a collision of trains, and in
 
 Cleveland, C., C. & I. Rd. Co.
 
 v.
 
 Walrath,
 
 38 Ohio, St., 461, 43 Am. Rep., 433, where the berth of a sleeping car fell on a passenger. The propriety of applying the doctrine in a personal injury action by a passenger against a common carrier had also been
 
 *507
 
 suggested, although the doctrine was not referred to by its present-day label, in the opinion by Sutliff, C. J., in
 
 Columbus & Xenia Rd. Co.
 
 v.
 
 Webb’s Admx.,
 
 12 Ohio St., 475, at page 496. On the other hand, this court, in effect, had refused to apply the doctrine, although the cases involved did not refer to it by its present-day label. See
 
 Huff
 
 v.
 
 Austin,
 
 46 Ohio St., 386, 21 N. E., 864, 15 Am. St. Rep., 613, holding that the mere fact of an explosion of a steam engine did not raise a prima facie presumption of negligence on the part of defendants, and
 
 Ruffner
 
 v.
 
 Cincinnati, Hamilton & Dayton Rd. Co.,
 
 34 Ohio St., 96, holding that no inference of negligence arose from the mere fact that damage by fire to property adjacent to a railroad track was caused by sparks emitted from locomotives.
 

 Thus, it will be noted that, even before the doctrine was referred to by its present-day label, this court had, in effect, recognized that it might be applicable in actions for personal injuries brought by passengers against common carriers. The case of
 
 Cincinnati Traction Co.
 
 v.
 
 Holzenkamp, supra,
 
 where the present-day label of the doctrine was first mentioned by this court, also involved that kind of a case, as did the recent decision in
 
 Fink
 
 v.
 
 New York Central Rd. Co., supra.
 
 See, also,
 
 Winslow
 
 v.
 
 Ohio Bus Line Co.,
 
 148 Ohio St., 101, 73 N. E. (2d), 504.
 

 With reference to these cases, it is significant that this court has said that a common carrier has the duty “to exercise the highest degree of care in the carriage of passengers.”
 
 Cleveland, C., C. & I. Rd. Co.
 
 v.
 
 Manson,
 
 30 Ohio St., 451;
 
 May Dept. Stores Co.
 
 v.
 
 McBride,
 
 124 Ohio St., 264, 178 N. E., 12.
 

 In addition to the passenger common carrier cases, the doctrine of
 
 res ipsa loquitur
 
 has been applied by this court to cases involving the delivery by a druggist of an injurious drug to a customer, instead of .a harmless drug which had been asked for
 
 (Edelstein
 
 v.
 
 Cook,
 
 
 *508
 
 108 Ohio St., 346, 140 N. E., 765, 31 A. L. R.,
 
 1333);
 
 the sudden bursting of the engine on a car, which was carrying employees of defendant, causing it to jump the track
 
 (Walters
 
 v.
 
 B. & O. S. W. Ry. Co.,
 
 111 Ohio St., 575, 146 N. E., 75); high voltage electric wires which fell on a highway
 
 (Glowacki, a Minor,
 
 v.
 
 North Western Ohio Ry. & Power Co.,
 
 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486, see
 
 Loomis
 
 v.
 
 Toledo Railways & Light Co.,
 
 107 Ohio St., 161, 140 N. E., 639); an explosion of a highly explosive substance
 
 (Hiell
 
 v.
 
 Golco Oil Co.,
 
 supra); accidents where motor vehicles had left the highway upon which they were being driven
 
 (Scovanner
 
 v.
 
 Toelke,
 
 119 Ohio St., 256, 163 N. E., 493,
 
 Morrow
 
 v.
 
 Hume, Admx.,
 
 131 Ohio St., 319, 3 N. E. [2d], 39, and
 
 Weller, Exrx.,
 
 v.
 
 Worstall,
 
 129 Ohio St., 596, 196 N. E., 637); and an accident where the defendant fell asleep while driving a motor vehicle
 
 (Collins, a Minor,
 
 v.
 
 McClure,
 
 143 Ohio St., 569, 56 N. E. [2d], 171).
 

 In all the foregoing instances in which the doctrine has been applied by this court, it is significant that the agency or occurrence involved represented a dangerous threat of serious injury or death.
 

 The doctrine of
 
 res ipsa loqtdtur
 
 was also referred to by its present label and applied in
 
 East Liverpool City Ice Co. v. Mattern,
 
 101 Ohio St., 62, 127 N. E., 408. The facts of that case are strongly reminiscent of the facts in the famous case of
 
 Rylands
 
 v.
 
 Fletcher,
 
 L. R., H. L., 3 Eng. & Irish App. Cas., 330, holding the defendant liable, even where without fault, for damage caused by escape from his premises of water collected thereon. The existence of such common-law precedents may have led this court in the
 
 ñíatiern case
 
 to apply the
 
 res ipsa loqidtur
 
 doctrine, instead
 
 of
 
 imposing liability without fault, even where there .was no dangerous threat of serious injury or death from the use of the instrumentality or from the occurrence
 
 *509
 
 involved. Cf.
 
 Langabaugh
 
 v.
 
 Anderson,
 
 68 Ohio St., 131, 67 N. E., 286, 62 L. R. A., 948.
 

 Apparently, the only other instance in which this ■court has applied the doctrine of
 
 res ipsa loquitur,
 
 where the agency or occurrence involved did not represent at least a dangerous threat of serious personal injury, is
 
 Worland
 
 v.
 
 Rothstein,
 
 141 Ohio St., 501, 49 N. E. (2d), 165 (sponge and water dropped onto plaintiff on public street by window washer on defendant’s premises). Cf. J.
 
 Livingston & Co.
 
 v.
 
 Streeter,
 
 114 Ohio St., 144, 150 N. E., 734. Here again, we have instances where some courts have imposed an absolute ■duty on abutting landowners not to permit upon their premises activities which will result in the fall of objects onto those lawfully traveling on a public highway. 25 American Jurisprudence, 823. See
 
 Nagle
 
 v.
 
 Brown
 
 37 Ohio St., 7. Cf.
 
 Richman Bros.
 
 v.
 
 Miller,
 
 131 Ohio St., 424, 3 N. E. (2d), 360. These holdings may have led this court to apply the
 
 res ipsa loquitur
 
 ■ doctrine in the
 
 Worland case.
 

 It is also significant to note that decisions, in which this court refused to apply the doctrine of
 
 res ipsa ■ loquitur
 
 on the ground that the accident did not occur “under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed,” involved instrumentalities or occurrences which did not represent dangerous threats ■of serious injury or death, even though the relationship between the parties was that of passenger and ■ common carrier.
 
 *
 

 Mansfield Public Utility & Serv
 
 
 *510
 

 ice Co.
 
 v.
 
 Grogg,
 
 103 Ohio St., 301, 133 N. E., 481, where plaintiff’s heel caught in slots of trolley floor;
 
 Cleveland Ry. Co.
 
 v.
 
 Sutherland,
 
 115 Ohio St., 262, 152 N. E., 726, where a small piece of glass punched out of defendant’s streetcar window fell on plaintiff.
 

 Generally, the amount of care required to constitute ordinary care, is commensurate with the danger involved. Thus, under circumstances of peculiar peril, a greater amount of care is required than where the circumstances are less perilous, because prudent and careful persons, having in view the object to be attained and the just rights of others, are, in such cases, accustomed to exercise more care than in cases less perilous. The amount of care is increased, but the standard is still the same. It is still nothing more than ordinary care under the circumstances of that particular case.
 
 Cleveland, Columbus & Cincinnati Rd. Co.
 
 v.
 
 Terry.
 
 8 Ohio St., 570, 581, 582;
 
 Northwestern Ohio Natural Gas Co.
 
 v.
 
 First Congregational Church of Toledo,
 
 126 Ohio St., 140, 184 N. E., 512; 29 Ohio Jurisprudence, 420, Section 30; 38 American Jurisprudence, 677, Section 31.
 

 Where the circumstances are such that ordinary care requires a great amount of care, a slight misstep by the defendant or a slight failure to act may represent the failure to exercise the ordinary care which the law considers as actionable negligence. Such slight, misstep or slight failure to exercise care may escape notice very easily, thus increasing the difficulty of proving that it occurred. This furnishes justification, where the dangerous instrumentality is under the control of the defendant when the injury occurs, for permitting the jury to infer negligence from the mere happening of the accident and for calling upon defendant for an explanation. Cf.
 
 Bradford Glycerine Co.
 
 v.
 
 St. Marys Woolen Mfg. Co.,
 
 60 Ohio St., 560, 54 N. E., 528, 71 Am. St. Rep., 740, 45 L. R. A., 658 (where the
 
 *511
 
 threat of danger was considered so great as to justify liability without fault). However, this doctrine of
 
 res ipsa loquitur
 
 represents an exception to the general rule that negligence will not be inferred from the mere happening of an event which causes injury.
 
 Ault
 
 v.
 
 Hall,
 
 119 Ohio St., 422, 429, 164 N. E., 518, 60 A. L. R., 128. It should therefore be applied only where the special reasons for its existence are present.
 

 Our conclusion, therefore, is that, in determining whether “the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed” so that the doctrine of
 
 res ipsa loquitur
 
 could be applied, the trial court should consider whether the circumstances are such as to indicate that ordinary care would require a high degree or great amount of care on the part of the defendant.
 

 Only in such a situation can it be said, in the absence of any evidence of negligence, that the accident was more probably the result of a negligent than of some other cause. In effect, before applying the doctrine of
 
 res ipsa loquitur,
 
 the court must be warranted in taking judicial notice of the fact that the accident does not happen in the ordinary course of events unless there is negligence. See
 
 Cincinnati Traction Co.
 
 v.
 
 Holzenkamp, supra,
 
 at 389. When ordinary care does not require a great amount of care, it will be just as likely, in the absence of evidence tending to prove negligence, that the accident was due to a cause other than negligence. Where no probability of negligence is indicated by the mere happening of the accident, the jury should not be permitted to infer negligence without some evidence tending to prove it.
 

 It is not necessary here to consider whether the mere threat of injury to property, in the absence of any threat of personal injury or death, would ever justify the application of the doctrine of
 
 res ipsa loquitur.
 
 
 *512
 
 However, where the doctrine is applicable because ■ there was a threat of personal injury or death requiring a high degree of care, recovery may be had for damage to property even though no personal injuries occurred.
 
 Scovanner
 
 v.
 
 Toelke, supra.
 

 In the instant case, plaintiffs have consistently maintained that the process used by defendants was one which did not represent a threat of serious injury or-death. While the process did involve use of an inflammable liquid, defendants have argued and the record discloses that it has been generally used safely and without mishap in this kind of business for years. If so, it would follow that there was no threat of serious personal or even property injury involved-in its use. There are no other circumstances in the record to indicate that ordinary care on the part of defendants in the use of this process would necessitate a high degree or great amount of care. Furthermore, it is well known that fires are of uncertain origin- and may result from many causes other than negligence. This is certainly not a case where the circumstances are such that the court would be warranted in taking judicial notice of the fact that this fire would 1 not have occurred in the ordinary course of events unless there was some negligence. See
 
 Ruffner
 
 v.
 
 Cincinnati, Hamilton & Dayton Rd. Co., supra.
 
 That, being so the doctrine of
 
 res ipsa loquitur
 
 would not apply.
 

 Plaintiffs contend also that the trial court erred in permitting the cross-examination of Mr. Chittenden, a secretary of plaintiff insurance company, to the extent allowed, over objection by the plaintiffs.
 

 It is difficult to understand why this witness was called upon by the plaintiffs to testify. The only apparent purpose of his testimony was to establish that the plaintiff insurance company did insure the property destroyed, did pay a portion of the loss to the-
 
 *513
 
 plaintiff owner, and did have an agreement with the plaintiff owner that it was to be subrogated to any claims which the plaintiff owner might assert against others by reason of the fire loss. Since the plaintiffs joined in filing their petition setting up their respective interests in the1 cause of action asserted, there could be uo controversy between them as to the disposition of any amount recovered. As pointed out by Day, J., in the court’s opinion in
 
 Northwestern Ohio Natural Gas Co.
 
 v.
 
 First Congregational Church of Toledo,
 
 126 Ohio St., 140, at page 147, 184 N. E., 512, “while technically by the general denial in its answer the gas company controverted all allegations in the petition, including the ones pertaining to insurance, such denials were immaterial because in fact it had no interest in the matter of insurance.”
 

 The complaint with regard to this cross-examination is that its result would be to create in the minds of the jurors the impression that here was a corporation of enormous size and wealth whose business it was to write fire insurance policies and to pay fire insurance claims.
 

 It appears that on direct examination this witness was asked by plaintiffs’ counsel as to the number of agents which his company had in Ohio and he testified, “several hundred.” It appears also that he testified, pursuant to questioning by plaintiffs’ counsel, that his company had eight or more men who traveled out of the Columbus office, calling on its agents in a supervisory capacity, that the company was a New York corporation and had been a corporation since 1853, and that he was the secretary of the company and its chief representative in Ohio. After he had identified certain documents, which fully disclosed the terms contained in the insurance policies relating to the property destroyed by the fire involved in the instant case, he was asked to tell the jury what
 
 *514
 
 the total amount of the insurance written under those policies was, notwithstanding the objection of the defendants on the ground that the written documents spoke for themselves. The record then discloses several pages of testimony bringing out the total amount of insurance provided for in each of the policies and the amount of the premium provided for in each such policy. Obviously, such testimony would have a tendency to prejudice the defendants by emphasizing the insignificant amount of the premium paid for the relatively large amount of insurance provided for in the policies, and also the insignificant amount of money received by the insurance company as compared with the large amount of the loss it was required to pay.
 

 Plaintiffs, to emphasize their point, call attention to the fact that the cross-examination of this witness covers twelve pages of the printed record. It will be noted that the direct examination of the witness covers approximately eighteen pages of that record.
 

 The first objection of the plaintiffs on cross-examination came after the witness had testified that his company was a member of the “Home Group” and he was asked how many there were in the “Home Group.” That question was then withdrawn.
 

 The next question objected to was asked after the witness testified that he did not know the total amount of insurance written by his company and he was asked whether it would be a billion dollars. That inquiry was then withdrawn.
 

 The witness then was permitted to answer, over objection, as to the approximate amount of premiums received by his company during the year 1942, in which the policies covering the loss involved in this case were written. Over objection, he was permitted to testify that their amount was approximately $1,800,-000.
 

 
 *515
 
 An examination of the record does not disclose any other questions relating to the size or wealth of plaintiff insurance company except a question as to approximately how many losses were adjusted for it by the Western Adjustment & Inspection Company. Over objection, the witness was permitted to answer and testified that the Toledo office, handling the northwest section of Ohio for plaintiff insurance company, handled approximately 300 or more a year. The witness, on direct examination, had testified as to the handling of claims for his company by that adjustment company.
 

 To be sure, the witness was questioned, without objection, with regard to the fact that his company’s business was the writing of fire insurance policies and the paying of fire insurance claims. However, he had been similarly questioned rather fully on that subject on direct examination.
 

 Having opened the door by presenting testimony of doubtful competency and relevancy on direct examination as to the small amount of premiums received by the plaintiff insurance company compared with the substantial amount paid on account of this fire loss, we do not believe that the trial court abused its discretion in permitting defendants, on cross-examination, to question the witness as to the total amount of premiums from all policies received by plaintiff insurance company during the year in which the policies testified about on direct examination were written. While this evidence on cross-examination tended to indicate that such plaintiff was a very large corporation, much of the testimony of the witness on direct examination tended to prove the same fact.
 

 We believe that the plaintiffs’ inquiries on direct examination were such as to estop them from claiming that the portions of the cross-examination about which they complain were prejudicial to them.
 

 
 *516
 
 Plaintiffs contend also that the trial court erred in (a) refusing to give plaintiffs’ requested instructions 2, 3, 4 and 6, to the effect that the failure of the builders to construct the building in conformity with the Ohio State Building Code was not a good defense as between the parties, and in (b) refusing to strike evidence tending to establish that the plans and specifications incident to the construction of the building were not approved by the Division of Safety of the city of Toledo and did not comply with the State Building Code. Neither of these claimed errors relates to the issue of defendants’ negligence. The jury’s verdict should have been for the defendants if they were not negligent. The issue of defendants’ negligence was properly submitted to the jury.
 

 Plaintiffs did not request the court to submit any interrogatories to the jury. Furthermore, the answers to the interrogatories, submitted at defendants’ request and without objection by plaintiffs, are clearly consistent with a finding that defendants were not negligent. Therefore, these other claimed errors, relating solely to other issues in the case, would not justify reversal of the judgment rendered on the general verdict for the defendants. 2 Ohio Jurisprudence (Revised, pt. 2), 1187, Section 646.
 

 The judgment of the Court of Appeals is reversed and that of the Common Pleas Court is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Turner, JJ., concur.
 

 *
 

 Several of the other decisions of this court, sometimes cited in connection with the doctrine of
 
 res ipsa loquitur,
 
 did not involve any actual determination as to whether the doctrine was applicable. See
 
 Ault
 
 v.
 
 Hall,
 
 119 Ohio St., 422, 164 N. E., 518, 60 A. L. R., 128;
 
 N. Y., Chicago & St. Louis Rd. Co.
 
 v.
 
 Biermacher
 
 110 Ohio St., 173, 143 N. E., 570;
 
 J. Livingston & Co.
 
 v.
 
 Streeter,
 
 114 Ohio St.,
 
 144,
 
 150 N. E., 734;
 
 Beeler
 
 v.
 
 Ponting,
 
 116 Ohio St., 432, 156 N. E., 599;
 
 Goodall
 
 v
 
 Deters,
 
 121 Ohio St., 432, 169 N. E., 443.