SCHMIDT, Exr., Appellant,

v.

UNIVERSITY OF CINCINNATI MEDICAL CENTER, Appellee.

[Cite as *Schmidt v. Univ. of Cincinnati Med. Ctr.* (1997), 117 Ohio App.3d 427.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API05–647.

Decided Jan. 16, 1997.

428

*Karen Foeller Marler,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Marilena R. Walters,* Assistant Attorney General, for appellee.

PETREE, Judge.

Plaintiff, Alfred Schmidt, executor of the estate of Barbara Schmidt, deceased, appeals from a judgment of the Court of Claims of Ohio in favor of defendant, University of Cincinnati Medical Center. Plaintiff sets forth the following assignments of error:

1. "The court erred to plaintiffs' detriment in granting defendant's Civil Rule 41(B)(1) motion to dismiss against the manifest weight of the evidence.

2. "The court erred to plaintiffs' detriment in granting defendant's Civil Rule 41(B)(1) motion to dismiss contrary to law."

In 1992, decedent Barbara Schmidt was admitted to Bethesda North Hospital complaining of chest pains. While at the hospital, Mrs. Schmidt experienced a heart attack. Although Mrs. Schmidt survived the heart attack, it was determined that she was in need of an automatic implantable cardioverter defibrillator ("AICD").

Thereafter, Mrs. Schmidt was admitted to the University of Cincinnati Medical Center, defendant herein. Dr. Thomas Ivey, an employee of the hospital, was scheduled to perform the surgical procedure necessary to implant the AICD. In order to implant the AICD, a small incision is made in the patient's abdominal wall, and a clamp is then used to open the abdominal cavity. This allows the surgeon to grasp a chest tube that contains wire leads. The wire leads are then tunneled through the abdominal wall to the pericardium. Tunneling is a blind procedure, meaning that the surgeon cannot actually see where the clamp is placed. In this case, the clamp had penetrated the peritoneum and perforated the stomach, allowing the leads to pass through the stomach. As a consequence of the perforation of the stomach, Mrs. Schmidt developed a postoperative infection. A second surgical procedure was performed by another physician to determine the source of the infection and course of treatment. It was during the second procedure that the perforation of the stomach was discovered. Mrs. Schmidt was subsequently treated for the infection and recovered.

In November 1994, Mrs. Schmidt brought the instant action against defendant, alleging medical malpractice. However, on December 8, 1995, Mrs. Schmidt passed away and her husband, Alfred Schmidt was substituted as party-plaintiff in this action. The case proceeded to a nonjury trial. Following the presentation of plaintiff's case, defendant moved for dismissal of plaintiff's cause pursuant to Civ.R. 41(B)(2). On April 16, 1996, the Court of Claims issued a decision dismissing plaintiff's case. A judgment entry of dismissal was issued by the court on that same day.

In each of plaintiff's assignments of error, plaintiff contends, for slightly different reasons, that the trial court erred when it dismissed plaintiff's medical malpractice claim pursuant to Civ.R. 41. Accordingly, we will address the assignments of error jointly.

Civ.R. 41(B)(2) provides:

"*Dismissal; Non-jury Action.* After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the

law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

· In *Johnson v. Tansky Sawmill Toyota, Inc.* (1994), 95 Ohio App.3d 164, 167, 642 N.E.2d 9, 10–11, we discussed the standard of review of a dismissal, pursuant to Civ.R. 41(B)(2):

"In a trial to a court without a jury, a motion for judgment by a defendant at the close of plaintiff's case is one for dismissal, pursuant to Civ.R. 41(B)(2) * * *. Pursuant to Civ.R. 41(B)(2), the trial court is the trier of fact and is to weigh the evidence. A dismissal pursuant to Civ.R. 41(B)(2) will not be set aside unless it is incorrect as a matter of law or is against the manifest weight of the evidence."

In order to establish medical malpractice, plaintiff must demonstrate by the preponderance of the evidence that the injury complained of was caused by a practice that a physician of ordinary skill, care or diligence, would not have employed, and that plaintiff's injury was the direct and proximate result of that practice. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, at paragraph one of the syllabus. Accordingly, proof of medical malpractice requires evidence of the pertinent recognized standard of the medical community and evidence that the physician negligently departed from that standard. *Id.* at 131, 75 O.O.2d at 186–187, 346 N.E.2d at 677.

In *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 548, 602 N.E.2d 423, 427, this court discussed the type of evidence necessary to sustain plaintiff's burden of proof in a medical malpractice case:

"Ordinarily, the issue of whether the physician has employed the requisite care must be determined from the testimony of experts, unless the standard of care is sufficiently obvious that laymen could reasonably evaluate the physician's conduct. Such expert testimony serves to aid the trier of fact in determining if there was malpractice. For, although customary practice is evidence · of what a reasonably prudent physician would do under like or similar circumstances, it is not conclusive in determining the applicable standard required. *Ault* [*v. Hall* (1928), 119 Ohio St. 422, 164 N.E. 518]." (Citation omitted.)

In this case, the trial court, as the trier of fact, determined that plaintiff presented insufficient evidence that Dr. Ivey had negligently departed from the applicable standard of care. The court expressly found that the testimony of plaintiff's own expert witness defeated plaintiff's medical malpractice claim. We agree.

Plaintiff presented the testimony of Dr. Loren Hiratzka, a board-certified thoracic surgeon. Hiratzka testified that he had performed between two hundred

and fifty and three hundred AICD implantations in the course of his surgical practice, that during these procedures he had never perforated a patient's stomach wall, and that he had never heard of such a complication occurring during this procedure. Hiratzka opined that decedent's injury was a result of a "technical error" on the part of Dr. Ivey. Hiratzka explained, however, that a technical error can occur even though the surgeon has exercised the optimum degree of care. Indeed, in the opinion of Hiratzka, the tunneling procedure performed by Dr. Ivey was not performed in a negligent manner. Hiratzka testified, to a reasonable degree of medical certainty, that Ivey did not deviate from the accepted standard of care.

The testimony of plaintiff's own expert witness, if believed, establishes that Ivey did not deviate from the appropriate standard of care. This testimony supports the trial court's decision to dismiss plaintiff's cause pursuant to Civ.R. 41(B)(2). Nevertheless, plaintiff argues that under the doctrine of *res ipsa loquitur* the trial court should have inferred negligence from the circumstances surrounding this injury. Plaintiff relies on the testimony of Hiratzka and the other expert witnesses who testified that they had never seen or heard of a surgeon perforating the stomach wall during the AICD implantation procedure.

*Res ipsa loquitur* is a rule of evidence that allows, but does not require, the trier of fact to draw an inference of negligence. See *Johnson v. Hammond* (1990), 68 Ohio App.3d 491, 493, 589 N.E.2d 65, 66–67. "To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, * * * under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Id.* at 493–494, 589 N.E.2d at 66–67, quoting *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66, 52 O.O.2d 366, 366–367, 262 N.E.2d 703, 705.

In *Johnson v. Hammond, supra,* the court discussed the application of *res ipsa loquitur* in medical malpractice cases:

"The doctrine of *res ipsa loquitur* cannot be based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results. *Oberlin v. Friedman* (1965), 5 Ohio St.2d 1, 8, 34 O.O.2d 1, 5, 213 N.E.2d 168, 173. ' * * * [B]efore applying the doctrine of *res ipsa loquitur*, the court must be warranted in taking judicial notice of the fact that the accident does not happen in the ordinary course of events unless there is negligence. * * * Where no probability of negligence is indicated by the mere happening of the accident, the jury should not be permitted to infer negligence without some evidence tending to prove it.' *Soltz v. Colony Recreation Ctr.* (1949), 151 Ohio St. 503, 511, 39 O.O. 322, 325–326, 87 N.E.2d 167, 172." *Id.,* 68 Ohio App.3d at 494, 589 N.E.2d at 67.

In this case, all the medical evidence presented to the trial court, including the testimony of plaintiff's own expert, establishes that decedent's injury could have occurred if ordinary care had been observed and that Ivey did not deviate from the accepted standard of care.  In our view, the fact that none of the medical experts had seen or heard of this particular complication occurring during the AICD tunneling procedure does not justify the inference of negligence where the entirety of the medical testimony in the record belies that conclusion.  Indeed, for the trial court to infer negligence in this case, the court would have had to ignore all of the expert medical testimony in the record and draw conclusions adverse to those drawn by the medical experts.  We are confident that the doctrine of *res ipsa loquitor* was not fashioned to achieve such a result.

In short, we hold that the decision of the Court of Claims was in accordance with the law and supported by the evidence.  Thus, the court did not err when it dismissed plaintiff's medical malpractice claim pursuant to Civ.R. 41(B)(2).  *Johnson v. Hammond, supra.*  Plaintiff's assignments of error are overruled.

Having overruled each of plaintiff's assignments of error, we hereby affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

JOHN C. YOUNG and CLOSE, JJ., concur.