OPINION
Plaintiff-appellant, William J. Schirmer, appeals from a decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Terry Moore M.D., David M. Schneider, M.D., David M. Schneider, M.D., Inc., ("DMS"), and Restorative Vision Center ("RVC") on his medical malpractice and lack of informed consent claims.
In 1996, appellant, age eighty-four, was considered legally blind and was under the care of Dr. Schneider's ophthalmology practice for multiple ophthalmologic medical problems, including advanced open angle glaucoma in both eyes, pseudophakia (presence of intraocular lens implants in both eyes), open posterior capsule in both eyes, and scaring on his cornea.
Thereafter, on December 11, 1996, Dr. Schneider performed cataract surgery using a phacoemulsifiation unit, an ultrasound instrument, to dissolve appellant's cataracts. Due to appellant's eyes being unable to support the cataractic lens, Dr. Schneider made a larger incision to remove the nucleus. When the incision was enlarged, the nucleus delivered a vitreous egress which required a vitrectomy, which is the removal and severance of vitreous jelly. Appellant's medical records show that he had some improvement in his vision following surgery, but his prognosis was guarded.
Following surgery, appellant developed cystoid macular edema ("CME") in his left eye. CME is a condition characterized by swelling and inflammation in the eye that is frequently seen following cataract surgery.
On March 19, 1997, appellant consulted with Dr. Terry Moore, an ophthalmologist employed by Dr. Schneider. Dr. Moore performed a diagnostic procedure, fluorescein angiography, to evaluate appellant's CME. Based upon his findings, Dr. Moore treated appellant's CME with a periocular injection of Kenalog, a steroid solution. A periocular injection uses a syringe and needle to inject a suspension of steroid medication into the tissues around the eye, particularly to the retina at the back of the eye. While injecting the Kenalog, Dr. Moore felt some resistance to the plunger of the syringe and withdrew the needle. Upon examination of appellant's eye, Dr. Moore informed appellant that Kenalog had penetrated into appellant's eyeball based upon an elevated eye pressure measurement of sixty. To relieve the pressure, Dr. Moore inserted a needle through the cornea of appellant's eye and removed some of the Kenalog resulting in a normal eye pressure measurement of fifteen. As a consequence of Kenalog in appellant's eyeball, Dr. Moore arranged for appellant to see Dr. Stewart Krug, an ophthalmologist specializing in vitreo retinal disorders, for surgical removal of any remaining Kenalog solution.
Later that day, Dr. Krug performed a pars plana vitrectomy on appellant's left eye and removed nearly all of the remaining Kenalog. It was during Dr. Krug's examination and surgery that a retinal perforation was discovered and treated with laser photocoagulation. On April 4, 1997, Dr. Krug performed vitreoretinal surgery to correct retinal detachment.
On December 3, 1997, appellant filed a complaint alleging that Dr. Moore negligently administered Kenalog into his left eye, and that such negligence caused appellant to undergo two surgical procedures. Appellant further alleged that Dr. Moore's negligence caused appellant's loss of vision in his left eye to the extent that it left him "totally blind." The complaint set forth a medical malpractice claim against Dr. Moore and a claim of vicarious liability against his employer, Dr. Schneider, and Dr. Schneider's professional corporation, DMS, and surgery center, RVC. After Dr. Moore and Dr. Schneider filed answers denying the allegations, appellant deposed Dr. Moore and Dr. Schneider.
On November 4, 1998, the trial court issued a scheduling order requiring that appellant disclose the names of his medical experts. In response, appellant identified Dr. Schneider and Dr. Krug as his expert witnesses.
On December 1, 1998, appellant filed a motion for leave to file an amended complaint that set forth an additional claim of medical malpractice. Appellant alleged that Dr. Schneider negligently performed cataract surgery on his left eye in December 1996, and that the cataract surgery was causally connected to the injection of Kenalog by Dr. Moore. In addition, appellant set forth two claims of lack of informed consent alleging that the cataract surgery and the injection of Kenalog had been performed without his informed consent. After filing motions in opposition to amend appellant's complaint, Dr. Moore and Dr. Schneider filed answers denying the allegations.
On January 22, 1999, Dr. Schneider, DMS, and RVC filed a motion for summary judgment based upon appellant's failure to offer any expert medical testimony, and that the additional claims of medical malpractice and lack of informed consent concerning cataract surgery were barred by the statute of limitations. In support of their summary judgment motion, Dr. Schneider, DMS, and RVC attached Dr. Schneider's affidavit stating that the care Dr. Schneider rendered to appellant was within the acceptable standards of ophthalmalogical practice, and that appellant was advised of the cataract procedure, alternatives thereto, the material risks, complications, and anticipated outcome. Dr. Schneider, DMS, and RVC attached a copy of the consent form signed by appellant authorizing cataract surgery.[1] In addition, Dr. Schneider, DMS, and RVC attached the affidavit of Robin L. Johnson, a paralegal for Dr. Schneider's attorney, stating that Dr. Krug was not testifying as an expert witness on behalf of appellant.
On January 27, 1999, Dr. Moore filed for a motion for summary judgment based upon appellant's failure to file a certificate of merit in a medical malpractice claim as required by R.C. 2305.01.1. Thereafter, on February 1, 1999, Dr. Schneider, DMS, and RVC filed a supplemental motion to join in Dr. Moore's motion for summary judgment.
On March 1, 1999, appellant filed a memorandum in opposition to the motions for summary judgment without attaching any expert testimony on the standard of care to support his claims. Instead, appellant alleged that inter alia, R.C. 2305.01.1 was unconstitutional, and that Dr. Moore's and appellant's depositions provided sufficient evidence to support his claims.
On March 9, 1999, the trial court heard oral arguments wherein appellant claimed that the doctrine of res ipsa loquitur
permitted his claims without expert evidence. At the hearing, Dr. Moore informed the court that he filed a motion that day to join in Dr. Schneider's, DMS's and RVC's motion for summary judgment based upon appellant's failure to offer any medical expert testimony.
On March 16, 1999, Dr. Schneider filed a supplemental brief on the issue of res ipsa loquitur to which Dr. Moore filed a brief in joinder. On March 30, 1999, appellant filed a supplemental memorandum in opposition to the motions for summary judgment, asserting that statements made by Dr. Moore and Dr. Schneider in their depositions were sufficient for the application of res ipsaloquitur.
By its April 13, 1999 decision, the trial court granted summary judgment in favor of Dr. Moore, Dr. Schneider, DMS, and RVC on the medical malpractice and lack of informed consent claims based upon appellant's failure to offer expert medical testimony.[2]
On May 6, 1999, the trial court filed an entry of dismissal.
Appellant timely appeals this decision raising a single assignment of error:
 THE COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.
In his sole assignment of error, appellant expressly limits his appeal to his medical malpractice claim alleging that Dr. Moore negligently administered Kenalog into his left eye and contends that the trial court misapplied the law by ruling that the standard of care of a physician in any medical malpractice claim must be established through expert testimony. Appellant asserts that the doctrine of res ipsa loquitur relieves him of his evidentiary burden to provide expert testimony.
Summary judgment is appropriate when: "(1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party." Civ.R. 56(C); Tokles Son, Inc.v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citingHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Once the moving party meets its initial burden, the nonmoving party must produce evidence on any issue which the party bears the burden of production at trial. Wing v. Anchor Media,Ltd. of Texas (1991), 59 Ohio St.3d 108, 111, citing Celotex v.Catrett (1986), 477 U.S. 317, 322-323.
Our review of summary judgment is de novo. White v. DePuy,Inc. (1998), 129 Ohio App.3d 472, 477. In applying a de novo
standard of review for summary judgment rulings, we review the trial court's decision independently and without deference to the trial court's determination and follow the standards in Civ.R. 56(C). Id.
When a defendant moves for summary judgment with or without supporting affidavits in a medical malpractice case, the plaintiff opposing the motion must set forth sufficient facts to prove all the elements of his claim. See Civ.R. 56(B) and (C). In order to establish a cognizable claim of medical malpractice, "it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." Bruniv. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus; Taylor v. McCullough-Hyde Mem. Hosp. (1996), 116 Ohio App.3d 595,599.
When the alleged negligence involves the professional skill and judgment of a physician, proof of medical malpractice requires evidence of the pertinent recognized standard of care within the medical community, breach of that standard of care by the defendant, and proximate cause between the medical negligence and the injury sustained. Bruni at 131. An exception occurs when "the lack of skill or care of the physician is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it." Id. at 130. See, also, Schmidt v. Univ. of Cincinnati Med. Ctr. (1997),117 Ohio App.3d 427, 430.
In the present case, we disagree with appellant's contention that the trial court misapplied the law when it determined that appellant was required to establish the standard of care by expert testimony. In its April 13, 1999 decision, the trial court stated that "[i]t is axiomatic that in a medical malpractice case the standard of care of a physician must be established through expert testimony." The trial court went on to state that "[c]ontrary to [appellant's] assertion, it is not within the knowledge of a lay person the proper standard of care to be applied to the procedure at issue in this case and whether or not [Dr. Moore and Dr. Schneider] violated such standard of care." We find that the court expressly recognized the exception for expert testimony in a medical malpractice case and found that it was not applicable in appellant's case.
In other cases concerning the treatment and care of the eye such as carotid artery cavernous sinus fistula, glaucoma, and cataracts, the applicable standard of care was found not to be within the common knowledge and experience of a laymen, and that the court and jury must be dependent on expert evidence. SeeBruni at 130-131, citing Ewing v. Goode (C.C.S.D. Ohio 1897), 17 F. 442, 443-444. Under the facts and circumstances of this case, we cannot say that the alleged negligence was so apparent as to be within the comprehension of laymen requiring only common knowledge and experience to judge it. Expert testimony was required to establish the requisite standard of care and skill under these facts and that Dr. Moore deviated from that standard of care causing appellant's injuries. As such, we agree with the trial court and find that the exception does not apply to the facts of this case.
Appellant asserts that a plaintiff may proceed either on the doctrine of res ipsa loquitur or a plaintiff may present expert testimony on the specific acts of negligence by a physician. We disagree with appellant's assertion that the doctrine of res ipsaloquitur relieves him of his evidentiary burden to present expert testimony.
"The doctrine of res ipsa loquitur is not a substantive rule of law furnishing an independent ground for recovery; rather, it is a evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." Jennings Buick, Inc. v.Cincinnati (1980), 63 Ohio St.2d 167, 169-170. For the application of the doctrine of res ipsa loquitur to apply, "a plaintiff must adduce evidence in support of two conclusions: (1) that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Morgan v.Children's Hospital (1985), 18 Ohio St.3d 185, 187-188, quotingHake v. Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 66-67. See, also, Becker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202,203.
Generally, "the doctrine of res ipsa loquitur does not obviate the requirement for expert medical testimony on the standard of care that is ordinarily observed in these circumstances." Johnson v. Hammond (1988), 47 Ohio App.3d 125,128. Except where the negligence is apparent to laymen and requires only common knowledge and experience, the second requirement of res ipsa loquitur requires expert testimony. Id.;Anderson v. Motta (1991), 73 Ohio App.3d 1, 3.
In the present case, appellant contends that he has presented sufficient evidence for the application of res ipsa loquitur. For the first requirement, appellant relies on the deposition testimony of Dr. Moore, wherein Dr. Moore confirmed that Kenalog was injected into appellant's eyeball causing appellant to undergo a surgical procedure, to establish that Dr. Moore was in exclusive control and management of the instrumentality causing the injury. Although the injection of Kenalog was under the exclusive management and control of Dr. Moore, and caused appellant to have surgery to remove any remaining Kenalog from his eye, we cannot say that the other injuries alleged by appellant were also under the same instrumentality or under the exclusive control and management of Dr. Moore. The instrumentality, whatever it may have been, causing appellant's detached retina and loss of vision may well have occurred under the non-party surgeon, Dr. Krug, or arguably due to the occurrence or development that produced inflammation in appellant's left eye. Under the first requirement, we find that appellant has failed to present any evidence, expert or otherwise, to show that all of his alleged injuries were proximately caused by the Kenalog and were under the exclusive control and management of Dr. Moore.
For the second requirement, appellant relies on the deposition testimony of Dr. Moore wherein Dr. Moore testified that this was his only incident of an injection of a steroid into an eyeball. Appellant also relies on the deposition testimony of Dr. Schneider wherein Dr. Schneider testified that he has never mistakenly injected a steroid in an eyeball and that this occurrence was the only incident by a physician within his medical practice.
Dr. Moore also testified that an intraocular injection of a steroid is a well-recognized complication that infrequently occurs during periocular injections. The fact that Dr. Moore has never experienced this particular complication before or that Dr. Schneider has never experienced or heard of a similar complication in his practice does not justify the inference of negligence. SeeSchmidt, 117 Ohio App.3d at 432; Sage v. Chung, 1994 Ohio App. LEXIS 1132, at *5 (Mar. 18, 1994), Trumbull App. No. 93-T-4950, unreported. The application of res ipsa loquitur cannot be "based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results." Morgan,18 Ohio St.3d at 189, quoting Oberlin v. Friedman (1965), 5 Ohio St.2d 1, paragraph three of the syllabus. Accordingly, we find that appellant was still required to present expert testimony under these particular facts to warrant the application of res ipsaloquitur.
We therefore conclude that appellant did not raise a genuine issue of fact as to whether his injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. Accordingly, Dr. Moore, Dr. Schneider, DMS, and RVC are entitled to judgment as a matter of law. Appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] The signed consent form authorizing cataract surgery states "I have had the opportunity to discuss surgery as well as complications that may occur, and these have been explained to my satisfaction. These may include, but are not limited to, hemorrhage, infection, over- or under-correction, pain swelling, bruising, drooping or lowering of the upper eyelid (ptosis), clouding of the cornea, glaucoma, retinal detachment, all of which may result in pain or loss of vision or even loss of the eye. I have released the RVC * * * and its staff from responsibility of these complications."
[2] The trial court granted the motions for summary judgment on behalf of all appellees based upon appellant's failure to present expert testimony for his claims of medical malpractice pursuant toBruni v. Tatsumi (1976), 46 Ohio St.2d 127, and lack of informed consent pursuant to Nickell v. Gonzalez (1985), 17 Ohio St.3d 136. The trial court, therefore, found that it was not necessary to address appellant's claim that R.C. 2305.01.1 was unconstitutional or appellees' claims that appellant failed to comply with R.C. 2305.01.1 or that the medical malpractice or lack of informed consent claims concerning cataract surgery alleged in the amended complaint were barred by the statute of limitations.