DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Ottawa County Court of Common Pleas in an action to enforce payment on a contract. Because we conclude that the trial court erred in granting a Civ.R. 41(B)(2) dismissal in favor of appellee, we reverse.
Appellant, George Hyland, owned Superior Wire and Specialties, Inc. ("Superior"), a wire manufacturing business, located in Ottawa County, Ohio. Appellant filed a breach of contract suit against Superior in 1997. The suit centered on the sale and transfer of Superior and appellant's subsequent employment by the company. The following facts were presented at trial solely through appellant's own testimony and exhibits.
Appellant testified that, in 1988, his attorney, Frank Justen, drafted and executed the paperwork necessary to incorporate his wire business; Justen was designated as director of the corporation, Superior Wire and Specialties, Inc. One hundred shares of stock were issued — seventy to appellant and thirty to Jerry Cullum, the then manager of appellant's business.
In 1990, appellant informed Justen he wanted to sell the business and Justen to handle the sale. Justen expressed a desire to purchase the business himself and appellant agreed to sell it to him for $100,000. Justen drafted all the documents to accomplish the transfer, including the issuance of seventy additional stock shares to Justen; the redemption by Superior of appellant's seventy shares; a promissory note in the amount of $126,000 to appellant from Superior to cover equipment to be paid at $1,250 per month; and a lease agreement in the amount of $1,250 per month to appellant for the building and property from which the business operated. Justen was made president, secretary, and treasurer of the corporation. The contract also contained an employment agreement that appellant was to work as a consultant to the corporation for nineteen hours per month (two hundred twenty-eight hours per year) for eleven years at a yearly compensation rate of $9,120. Superior was also to cover the cost of appellant's medical insurance or to pay supplemental insurance premiums after appellant's retirement. The sale documents were executed and, from time to time, appellant stopped by the plant site and performed various tasks, including material pick ups and deliveries to and from other companies. However, he was never asked or required to fulfill the nineteen hours per month designated in the contract.
Justen kept the business for approximately one year and then sold Superior to William Smith. Appellant was unaware of this sale until after it was completed. Nevertheless, for the first five years after the sale, appellant continued to perform as he had previously. According to appellant, he stopped in from time to time to chat with Smith and continued to receive his paychecks as set out in the contract. Appellant also noted that when, due to lack of funds, the company sometimes failed to pay his medical insurance premiums, he would pay the premiums him self.
In 1996, appellant decided to move to Tennessee and informed Smith of his new address. Appellant testified that he received one or two checks in Tennessee before receiving a check that stated it would be his final payment unless he returned to work, one hour per day for the first nineteen days of each month. Appellant stated that he tried to accommodate this sudden change in Superior's expectations, by offering to come back and work several days per month, but this offer was rejected. When appellee refused to send any more payments, appellant sought legal advice and subsequently filed an action for breach of contract.
At the close of appellant's case-in-chief, appellee moved for a "directed verdict", arguing that appellant had breached the contract and that appellee was no longer required to perform under such contract. Appellant opposed the motion stating that he had acted in conformity with the contract as drafted by his attorney, who had acted unethically and had taken advantage of appellant.
The trial court granted a dismissal pursuant to Civ.R. 41(B)(2) on a basis which was not argued or pursued by the parties. The court ruled that the contract was an attempt to avoid paying capital gains taxes which was "illegal" and, there fore, was unenforceable against appellee.
Appellant now appeals, setting forth the following sole assignment of error:
 "The trial court erred prejudicially in granting defendant's Civ.R. 41(B)(2) motion at the end of plaintiff-appellant's case in chief [sic] upon its express finding that the agreement in question was illegal in purpose and intent to avoid capital gains taxes and to provide an unlawful deduction for unearned compensation. The trial court erred prejudicially in imposing equal culpability upon the client and attorney, especially where the attorney was acting in his own economic self interest."
We initially note that much of appellant's argument centers around his former attorney, Frank Justen, and his allegedly unethical actions in drafting the initial agreement. While we do not disagree that Justen's actions may have been ethically repugnant, he was never a party in this lawsuit and his actions are, consequently, not subject to our review.
Civ.R. 41(B)(2) provides in relevant part:
 "Dismissal; Non-injury Action. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. * * *"
Thus, the trial court is a trier of fact and may weigh the evidence in making its Civ.R. 41(B)(2) determination. Schmidt v.University of Cincinnati Med. Ctr. (1997), 117 Ohio App.3d 427,430. Upon appellate review, a Civ.R. 41(B)(2) dismissal will not reversed unless it is found to be incorrect as a matter of law or is against the manifest weight of the evidence. Id.; Johnson v.Tansky Sawmill Toyota, Inc. (1994), 95 Ohio App.3d 164, 167.
As to the legal issues involved in this matter, we note that subsequent acts and agreements may modify the terms of a contract, and unless otherwise specified, neither consideration nor a writing is necessary. Smaldino v. Larsick (1993), 90 Ohio App.3d 691,698. Oral agreements to modify a prior written agreement are binding if based upon new and separate legal consideration or, even if gratuitous, are so acted upon by the parties that a refusal to enforce the oral modifications would result in fraud to the promise. See Citizens Fed. Bank v. Brickler (1996), 114 Ohio App.3d 401, 407, citing to Mehurin v. Stone (1881), 37 Ohio St. 49, 57-58; SoftwareClearing House, Inc. v. Intrak, Inc. (1990), 66 Ohio App.3d 163, 172.
In this case, the trial court indicated that it wholly believed appellant's version of the facts. In those facts, appellant indicated that although he was available and had performed minimal tasks for the company from time to time, both Justen and Smith did not require him to actually complete the designated nineteen monthly hours of service for at least six years of the eleven year contract term. Therefore, the actions by Justen and Smith provide evidence that they waived compliance and orally modified the contract.
Consequently, Smith's sudden demand, after five years, that appellant was to perform his consulting services at a specific time and place, evidenced an attempt to unilaterally modify the contract again, which was not accepted by appellant. Thus, appellant offered evidence that appellee breached a modified, but otherwise valid, contract.
The trial court, however, dismissed the case on the basis that it found the original contract for the transfer of the business to be "illegal" because it attempted to avoid the payment of capital gains taxes. In our view, the avoidance of capital gains tax payment is not illegal in and of itself; rather, there must be proof that the avoidance is accomplished by an illegal transaction or act. Although appellant repeatedly acknowledged that his attorney had drafted the contract for the purpose of avoiding capital gains taxes, no evidence was presented which demonstrates that the contract itself was "illegal" or that appellant intended to illegally avoid paying taxes. On the contrary, what the evidence shows is that appellant wanted to sell his business; that he received certain valuable consideration from that sale; that, pursuant to that sale, he provided certain consultation services for compensation that was to continue for eleven years; and that, by agreement between the parties, he was not required for six years to fulfill the actual number of monthly or yearly hours designated by the contract.
We conclude that appellant did offer evidence that a valid contract had been breached and no evidence was offered which supported the trial court's finding that the contract was "illegal" and unenforceable. Therefore, the trial court's dismissal pursuant to Civ.R. 41(B)(2) was incorrect as a matter of law and was against the manifest weight of the evidence.
Accordingly, appellant's sole assignment of error is well-taken.
The judgment of the Ottawa County Court of Common Pleas is reversed, and the case is remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ JAMES R. SHERCK, J. JUDGE
MELVIN L. RESNICK, J., RICHARD W. KNEPPER, P.J., CONCUR.