Marshall, C. J.
 

 This action originated in the court of common pleas of Cuyahoga county as a suit for damages for malpractice. Mrs. Ault, a woman of about 74 years, consulted Dr. Hall, and her ailment was diagnosed by him as requiring the surgical removal of her gall bladder. She accordingly contracted with him for such operation, and the sur
 
 *424
 
 geon selected St. John’s Hospital in Cleveland as the place of operating, he being a member of the staff in that institution. Mrs. Ault had no choice in the selection of the institution or the surgeon’s assistants, but made no objection thereto. The operation took place May 25, 1925. It being an abdominal operation, numerous surgical sponges were employed for wiping and walling off the abdominal cavity from possible infections, and for packing off intestines and arresting hemorrhages. At the conclusion of the operation the incision was closed, and one of the sponges was permitted to remain in the abdomen. The incision did not heal, and the suppuration became more pronounced, and the incision was repeatedly cauterized, until nearly eight weeks later it was discovered that the, trouble was due to a sponge. On removal of the sponge it was found that it had rotted, a hole in the stomach, so that when the sponge was removed food taken into the stomach seeped out through the hole in the stomach through the open wound. Further treatment followed during which the patient was kept alive by rectal injections of food and subcutaneous injections of moisture until the hole in the stomach sufficiently healed to retain food. As a result the patient has endured great suffering and it is claimed that her health has been permanently impaired.
 

 The testimony adduced in the course of the trial shows that the surgeon had a first and second assistant surgeon and three nurses, each of whom was subject to his orders and control; that in the coursé of every such operation it is necessary to use surgical sponges consisting of long strips of gauze; that it is the approved practice to require a pair of for
 
 *425
 
 ceps, called a hemostat, to be attached to every sponge left in the abdomen during the operation; that 'wiping sponges do not under the approved practice require a hemostat to be attached, because they are removed from the abdomen as soon as they are used;-that during the operation a wiping sponge was in fact placed within plaintiff’s abdomen and allowed to remain there without a hemostat attached.
 

 Dr. Hall in his answer admitted performing the operation, but claimed that he had at all times exercised due and proper care. As further defensive matter he alleged that it is the custom and practice generally among surgeons, where an abdominal or major operation is to be performed, to have present a house surgeon, a first assistant surgeon, an anesthetist, a table nurse, a sponge nurse, and, an instrument nurse, and that this custom and practice prevails generally in the locality of Cleveland and was the practice and custom in St. John’s Hospital. He further alleged that all said employees were present in the operating room and assisted in the operation. He further alleged that it is the duty of the “sponge nurse” to correctly count the number of operative sponges used, and that it is the custom of surgeons in hospitals generally in Cleveland, Ohio, and particularly in St. John’s Hospital, to rely upon the sponge count so reported by the sponge nurse, and that he did in fact rely upon her count and thereby followed the general practice of surgeons, and thereupon closed the incision. He further alleged that neither the anesthetist, the assistant surgeons, nor any of the nurses, were employed by or selected by him. ,
 

 
 *426
 
 There was very little if any contradiction in the testimony, and for the purposes of this discussion we will assume that all the foregoing matters were definitely established. All witnesses agreed that a large sponge used for packing or walling off or stanching blood or pus should have a hemostat attached, which would be left hanging over the outside of the body, and that such precaution would be absolute insurance against a sponge being left in the body. They likewise agreed that a wiping sponge need not have such attachment, because such a sponge is never left in the abdomen beyond the period of its immediate use. This particular sponge was of gauze material several inches wide and two or three feet long, and was large enough to have been employed either as a wiping sponge or for packing.
 

 It is self-evident that some one was guilty of negligence. If the sponge was used for packing purposes the usual precaution of attaching a hemostat was omitted. If it was used for wiping purposes the surgeon or assistant surgeon who used it did not immediately remove it. The trial did not establish who was the negligent party, but it must have been Dr. Hall, or one or the other of his two assistants, and the only testimony on the point was that of Dr. Hall, who.testifies as follows:
 

 “Now I could not know whether it was put in through one of my assistants under an emergency or not. I am unable to say. I remember that we had quite a little difficulty in controlling hemorrhage and in the stress of that moment my assistants might have done it. I might have done it.”
 

 Not to remove a wiping sponge from the cavity
 
 *427
 
 immediately after its use, or, if left in, not to attach a hemostat, would he evidence of a want of ordinary care. Whether the deposit of this particular sponge was for the one purpose or the other, and whether or not a hemostat was attached, is not the ultimate inquiry. It is only important as bearing upon the question whether the precautions which good surgery -dictates were employed to prevent the sponge being overlooked. The negligence and injury being established, the inquiry relates to the legal responsibility of Dr. Hall.
 

 We need not determine in this particular case whether the action sounds in contract or in tort. The duty and the responsibility of Dr. Hall do not depend upon any such determination. There was an express contract to perform an operation. This express contract carried the implied obligations that Dr. Hall would select the place of its performance and that he would be aided by necessary assistants. Superimposed upon these express and implied provisions, the law implies a duty to exercise the ordinary care and skill of his profession in the light of the modern advancement and learning on the subject, and it results from that duty that he became liable for any injuries resulting from his failure to do so. There was no express agreement that the operation would be performed in any particular way, or that the operation would effect a cure of her ailment. The law governing the implied liability of a. surgeon under the circumstances has been clearly stated by this court in
 
 Craig
 
 v.
 
 Chambers,
 
 17 Ohio St., 253:
 

 “The implied liability of a surgeon, retained to treat a case professionally, extends no further, in
 
 *428
 
 the absence of a special agreement, than that he will indemnify his patient against any injurious consequences resulting from his want of the proper degree of skill, care, or diligence in the execution of his employment.”
 

 This rule has been approved and followed in
 
 Gillette
 
 v.
 
 Tucker,
 
 67 Ohio St., 106, 65 N. E., 865, 93 Am. St. Rep., 639;
 
 Hier
 
 v.
 
 Stites,
 
 91 Ohio St., 127, 110 N. E., 252, and has been substantially followed in
 
 Bowers
 
 v.
 
 Santee,
 
 99 Ohio St., 361, 124 N. E., 238.
 

 In the trial of malpractice suits the jury should be instructed that the plaintiff must show by a preponderance of the evidence, and the jury must find, that the defendant in the performance of his service either did some particular thing or things that physicians and surgeons of ordinary skill,. care, and diligence would noti, have done under the same or similar circumstances, or that the defendant failed or omitted to do some particular thing or things that physicians and surgeons of ordinary skill, care, and diligence would have done under the same or similar circumstances. It follows of course that plaintiff must show and the jury must find that the injury complained of was the direct result of doing or omitting to do some one or more of such particular things. In
 
 Palmer
 
 v.
 
 Humiston, 87
 
 Ohio St., 401, 101 N. E., 283, 45 L. R. A. (N. S.), 640, it was held that under conditions and circumstances similar to the case at bar the use, care, and removal of surgical sponges are a part of the operation contracted for. The same doctrine has been many times declared in other jurisdictions. With this doctrine we heartily concur.
 

 One of the assignments of error in the instant
 
 *429
 
 case is that the court erred in imposing too great a burden upon the plaintiff in establishing her case, in charging a special instruction requested by the defendant: “The court says to you as a matter of law that the presumption is in favor of the defendant in this case, namely, that Dr. Hall, at the time complained of, was in the exercise of ordinary care in the premises.” Similar expressions are so often employed by the trial courts of this state that we would not reverse this judgment upon' that ground alone, and yet it must be said that it was not an accurate statement of the proposition. It is more accurate to instruct the jury that no presumption of negligence is indulged from the mere fact of injury, but that the burden of proof is on the plaintiff to show by the preponderance of the evidence ..that she was injured by the negligence of the defendant and that such negligence ' occasioned her damage. Of course this very general statement would not apply where the doctrine of
 
 res ipsa loquitur
 
 is involved, or, in case of common carriers, who contract for the safe carriage of persons and property, and perhaps in other instances. Several of the surgeons who were called as witnesses in this case testified that the operation in the instant case was a major operation. The Legislature of Ohio has defined a major operation as follows: “The performance of those surgical operations attended by mortality from the use of the knife or other surgical instruments.” Section 1288, General Code. It follows from such a dangerous operation that great care and caution must be followed by those who engage upon its performance.
 

 The situation created by the frank admission of
 
 *430
 
 Dr. Hall that the unattached sponge may have been placed in the cavity by himself, and that in any event it was so placed either by himself or one of his assistants, is sought to be obviated by the proof of the practice or custom of relying upon the sponge nurse. In the state of this record, as presented to us, this alleged custom is the final inquiry concerning the legal responsibility of Dr. Hall. It should be stated in passing that Dr. Hall was questioned as to whether he had inquired of the sponge nurse concerning the sponge count, to which he replied: “I couldn’t tell you whether or not I asked that.” Upon the question being repeated in another form, he again stated: “I couldn’t say that; no, sir.” The defendant did not call either of the two assistant surgeons or any of the three nurses to testify. The anesthetist gave his testimony and was examined by counsel for Dr. Hall as follows:
 

 “Q. Now, after the operation was performed and the gall bladder was removed what do you know regarding the correct count of the sponges? A. Well, that count is checked. That _ count is made and checked. The Sister in charge of the operating department usually comes in on a case of that kind and makes a check herself to see that those sponges are properly counted and properly accounted for.
 

 “Q. And this day did you hear Dr. Hall ask the sponge nurse whether they were accounted for? A. That question is always asked.”
 

 Thereupon there was some colloquy, and it was only after the court had propounded the question that the witness gave a direct affirmative answer.
 

 It may not be important whether the inquiry was
 
 *431
 
 made of the sponge nurse or not, if the custom of relying upon the sponge nurse has the force and effect insisted upon by counsel for Dr. Hall: It is evidently the insistence of counsel for Dr. Hall that this portion of the performance of an abdominal operation is by general custom delegated to a nurse, and that the surgeon by reason of that custom is permitted to rely upon the accuracy of her count and the care with which she discharges that service, and that no further responsibility attaches to the surgeon for unattached sponges permitted to be left in the abdominal cavity.
 

 Even though it is admitted that the sponge was left in the cavity, and that Dr. Hall himself might" have done it, counsel presents for our determination the question whether such a practice or custom if followed will relieve a surgeon from legal responsibility. More definitely stated, the question is whether such a practice or custom is competent to be shown as a complete defense to the action, and not merely competent to be shown as bearing upon the question of due care.
 

 At the close of the testimony and before the charge was given to the jury, counsel for defendant requested and the court charged the following:
 

 “The court says to you as a matter of law that if under the evidence in this case Dr. Hall had a right to rely upon the count of the sponge nurse who was in the employ of St. John’s Hospital and if surgeons practicing in this vicinity in the technical routine of an operation of this character are accustomed to rely upon the count of the sponge nurse, then the court says to you as a matter of law that your verdict herein should be in favor of the defendant, Dr. Hall.”
 

 
 *432
 
 The evidence is uncontroverted that surgeons practicing in the vicinity of Cleveland, Ohio, are accustomed to rely upon the count of the sponge nurse, and this special instruction given before argument afforded counsel for the defendant the opportunity to impress upon the jury that there was.' no alternative except to render a verdict in defendant’s favor. The situation was rendered even more difficult for the plaintiff by reason of the fact that the trial judge at the conclusion of the testimony offered by the anesthetist volunteered the question: “Is it the usual and customary thing for all surgeons in this vicinity to rely upon the report of the sponge nurse ? ” At that point counsel for plaintiff made the statement: “Plaintiff objects to the question put by the court for its obvious emphasis upon one phase of the testimony, both through emphasis in the wofds and in the manner in which the question was stated, and excepts.” The general charge to the jury after argument and immediately prior to final submission contains the statement: “On the other hand, I say to you as a matter of law that in the event that you should find from all the facts that this defendant used and adopted the usual, ordinary and accepted method in the performance of this operation, and that the evidence convinces you that here in this vicinity he had a right to rely upon the sponge nurse as to the count and the number of gauze sponges that were used and extracted, and taken out of that wound when it was closed up, then I say to you that in that event he could not be fdund liable in this case, if that is the usual, ordinary and. accepted rule among surgeons in this vicinity, and your verdict should be
 
 *433
 
 for the defendant.” Each of these instructions is somewhat involved and was in some measure conditioned upon the right of Dr. Hall to rely upon the count of the sponge nurse, and yet it is plain that the jury could have gotten no other notion than that it was customary to rely upon the count of the sponge nurse, and that if a sponge nurse were employed, and all sponges accounted for by her, the surgeon was thereby relieved of all responsibility for sponges so used.
 

 No one will for a moment question the wisdom of a system of committing to a nurse the duty of preparing in advance a supply of sponges, carefully counted, and to continue to have the custody of the sponges, and to hand them to the operating surgeon as required, and to receive them back from the surgeon after they have served their purpose, and again to carefully count them to be sure that they have all been returned. If this system is followed and no sponges are used other than those issued by the1 sponge nurse, and the number issued by her tallies with the number returned to her by the surgeon, it is impossible that any sponges could be left in the body of the patient. The system itself must therefore be held to be reasonable in furtherance of the great care and caution necessary on such occasions. The cold fact remains, however, that after all such precautions have been exercised, sponges are occasionally left in the wound after being closed. It would seem therefore that nothing further need be stated to show that the system is not an absolute guaranty against mistakes. These mistakes frequently result in permanent impairment of health, and even death. That the system
 
 *434
 
 itself is a reasonable on'e is self-evident. That it is usually employed by, physicians and surgeons in abdominal operations generally, and particularly in the vicinity of Cleveland, is fully established by this record, and is uncontradicted. "Whether or not Dr. Hall had a right to rely upon the accuracy of the nurse is another and different question.
 

 The service of the sponge nurse reduced the hazards of the operáting room and was one of the facilities provided by the operating surgeon for guarding against accidents, for which he was entitled to credit, and the trial court properly permitted the system to be shown as reflecting upon the care and caution of the surgeon, but that system cannot be accepted as the only security upon which the patient had a right to rely and as displacing the personal care and caution which she had a right to expect from Dr. Hall himself. A duty still rested upon the surgeon to employ his own skill and observation to assure himself that no sponges had been allowed to remain within the wound at the time it was closed. The plaintiff was unconscious, and there is nothing to show that she understood the system whereby sponges were to be accounted for, and there is nothing to show that she was consenting that the surgeon should be relieved of all responsibility by employing a system which was entirely reasonable within itself.- We have already observed that the removal of surgical sponges is a part of the operation itself. The surgeon being charged with the duty, of removing them, ordinary care and caution forbids that he should have the right to delegate that responsibility in an unqualified manner to any system, however efficient. We
 
 *435
 
 have also observed that the surgeon is not an insurer of a successful operation, and we do not now go to the extent of saying that the surgeon insures that all sponges will be removed. He is only charged with that degree of care and caution commensurate with the importance of the task he has undertaken. Under our system of jurisprudence it is the province of the jury to determine whether all was done that reasonable care and skill required. This inquiry was not submitted to the jury for their determination in the instant case, but they were only required to ascertain whether the system of employing a sponge nurse prevailed in the vicinity of Cleveland, and whether it was in fact employed by Dr. Hall, and the determination of that question in the affirmative required a verdict in favor of the defendant. There is nothing in this record to indicate that the sponge which was the cause of the injury might not readily have been discovered by the surgeon if he had made a search for it before the wound was closed. The foregoing observations have abundant support in the authorities. In
 
 Palmer
 
 v.
 
 Humiston, supra,
 
 it was sought to prove a similar custom, but this court properly held that no evidence bearing upon such- alleged custom was admissible, for the reason that the same had not been pleaded. It does not of course follow that if it- had been pleaded it would have been accepted as relieving the surgeon from responsibility. A number of courts of last resort have held it is error for a trial court to instruct the jury that if the custom of counting by nurses was reasonable, and the surgeon followed it, he was entitled to a verdict.
 
 Davis
 
 v.
 
 Kerr,
 
 239 Pa., 351, 86 A., 1007, 46 L. R. A. (N. S.),
 
 *436
 
 611;
 
 Paro, Admx.,
 
 v.
 
 Carter,
 
 177 Wis., 121, 188 N. W., 68;
 
 Walker
 
 v.
 
 Holbrook,
 
 130 Minn., 106, 153 N. W., 305;
 
 Barnett’s Admr.
 
 v.
 
 Brand,
 
 165 Ky., 616, 177 S. W., 461;
 
 Spears & Purifoy
 
 v.
 
 McKinnon,
 
 168 Ark., 357, 270 S. W., 524;
 
 Reynolds
 
 v.
 
 Smith,
 
 148 Iowa, 264, 127 N. W., 192.
 

 In the Pennsylvania case the court took a more advanced stand than other courts in declaring that where a sponge is left in the body of the patient following the operation a presumption of negligence arises against the surgeon, and the burden of proof is cast upon him. The court 'further held that this burden is . not entirely discharged by showing compliance with a custom to rely upon the count of nurses for assurance that all sponges have been removed. In the Wisconsin, Minnesota, Kentucky and Arkansas cases, the courts held that the evidence of the usual custom of counting the sponges by a nurse before and after the operation, and reliance upon that custom, was competent, but not conclusive that defendant was not negligent.
 

 In
 
 Spears & Purifoy
 
 v.
 
 McKinnon, supra,
 
 it was held that it was not error to .exclude testimony relating to such practice or usage. On the other hand, the Supreme Judicial Court of Massachusetts, in
 
 Guell
 
 v. Tenney,......Mass.,......, 159 N. E., 451, held: “A surgeon-performing an operation at a hospital, with nurses employed by the hospital present and assisting, cannot be charged with negligence if he did not, while performing the operation, also keep count of the sponges used.” In the same case that court refused to apply the doctrine of
 
 res ipsa loquitur.
 
 The Appellate Court of Indiana, in
 
 Funk
 
 v.
 
 Bonham,
 
 151 N. E., 22, held that
 
 *437
 
 the question of negligence in leaving a sponge in a body cavity, after an operation, is a question of science, and that only persons possessing scientific or expert knowledge could give testimony upon that question. It was further held in that case that, it having been shown that the surgeon had taken approved precautions, there was no competent evidence to support a verdict against him. None of the cases cited in the opinion in that case unqualifiedly supports the doctrine that following an approved custom exonerates the surgeon from liability. Neither the diligence of counsel nor the efforts of this court have disclosed any other authorities than the Indiana and Massachusetts cases holding that following an approved custom is a complete defense.
 

 With rare exceptions the courts are quite uniform in declaring that conformity to a practice or usage is regarded as matter proper for the consideration of the jury in determining whether or not sufficient care has been exercised in a particular case. The authorities are equally rare where courts have declared as matter of law that due care is established by showing that all precautions and safeguards customarily used in the conduct of a similar undertaking have been employed. The overwhelming weight of authority supports the general rule that customary methods or conduct do not furnish a test which is conclusive, or fix a standard. It is obviously a dangerous practice to permit any business, trade, or profession to fix its own standards. It is equally obvious that any court which determines the proper standard has usurped the functions of a jury. These authorities are so numerous and so
 
 *438
 
 uniform that we shall not undertake to cite or discuss them. The subject of custom, in the technical sense of usage which has attained the force of law, is not involved in this proceeding. We have before us nothing more than an attempt to show the usual method or system of doing a practical thing which must necessarily be done in some way, and may be done in a variety of ways. Surgical science should be commended for the practice of having a nurse whose special task is to account for sponges, but it ought to be severely condemned if it places sole reliance upon that practice. The duty of a surgeon to exercise care cannot be delegated to another, without recourse. Custom will not justify a negligent act or exonerate from a charge of negligence. Long-continued careless performance of a duty by any trade, business or profession will not transform negligence into due care.- 'Usage cannot avail to establish as safe in law that which is dangerous in fact. We therefore hold both upon reason and authority that the test of the usage or practice of having a sponge nurse to count the sponges is competent as reflecting upon the care and diligence of the surgeon, but that reliance upon such custom alone is not a complete defense to the charge of negligence.
 

 Counsel for Mrs. Ault requested the court to charge that the surgeon had the complete right and power to control the activities of all assistants at said operation, and that if the failure to remove the sponge was due to the negligence of any of said assistants the surgeon would be liable. It is now-urged that the court erred in refusing to so charge. The refusal of the court to so charge was not preju
 
 *439
 
 dicial in view of the fact that the negligence-was not traced to any particular assistant, and for the further reason that the surgeon admitted that he might have done it himself. Since the negligence is • as referable to the surgeon as to any one else, the doctrine of
 
 respondeat superior
 
 is not involved. We therefore make no declaration upon the applicability of the doctrine of
 
 respondeat superior
 
 in cases of this character, leaving that subject for authoritative declaration to a future case where the question will be more clearly and directly involved.
 

 The judgments of the lower courts must be reversed and the cause remanded to the court of common pleas for new trial in accordance with this opinion.
 

 Judgment reversed.
 

 Day, Allen, Kink ale and Bobinson, JJ., concur.
 

 Jones and Matthias, JJ., concur in the judgment.