ABER et al., Appellees and Cross–Appellants,

v.

VILAMOURA, INC., et al., Appellants and Cross–Appellees.

[Cite as *Aber v. Vilamoura, Inc.,* 184 Ohio App.3d 658, 2009-Ohio-3364.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24303.

Decided July 8, 2009.

Robert W. McIntyre and Thomas M. Horwitz, for appellants and cross-appellees.

Todd A. Harpst and Ronald S. Kopp, for appellees and cross-appellants.

DICKINSON, Presiding Judge.

## INTRODUCTION

{¶ 1} Tom and Cynthia Aber hired Vilamoura, Inc. to build a house for them. After Vilamoura abandoned the project, the Abers stopped paying it. When Vilamoura obtained a lien on the Abers' property, the Abers sued it and Robert and Lucinda Corna, who were officers of Vilamoura. At the final pretrial conference, the parties told the trial court that they had reached a settlement. Over the next few months, however, they were unable to agree on appropriate language. The Abers eventually moved the court to enforce the agreement. Vilamoura and the Cornas opposed the motion, arguing that there was no meeting of the minds on all material terms and alleging that the Abers had committed fraud. Following an evidentiary hearing, the trial court found that there was a valid oral settlement agreement. It ordered sanctions against Vilamoura and Mr. Corna because they had acted in bad faith in holding up the written agreement. Vilamoura and Mr. Corna have appealed, arguing that there was no agreement, that the Abers committed fraud, and that the ordering of sanctions was inappropriate. The Abers have cross-appealed, arguing that the court also should have ordered sanctions against Mrs. Corna. This court affirms because the trial court's findings were not against the manifest weight of the evidence and it properly ordered sanctions.

## FACTS

{¶ 2} In April 2004, Vilamoura agreed to build a house for the Abers. During construction, the Abers allegedly requested a number of modifications that increased the cost of construction. Although Vilamoura was supposed to have the house substantially completed by October 2004, it did not. According to the Abers, Vilamoura abandoned the project, forcing them to hire another company to finish the house. The Abers therefore stopped paying Vilamoura. In response, Vilamoura filed a lien on the Abers' property.

{¶ 3} The Abers filed a complaint against Vilamoura and the Cornas, alleging breach of contract, fraud, negligence, breach of warranty, slander of title, and violations of the Ohio Consumer Sales Practices Act. Vilamoura counterclaimed against the Abers. At the final pretrial conference, the parties told the trial court that they had reached an oral settlement agreement. Vilamoura and Mr. Corna allegedly agreed to pay the Abers $100,000 in two installments, correct a list of defects identified by a house inspector, construct a screened-in porch for the house, and install a storm door. The Abers agreed to keep the terms of the settlement confidential. Although not as part of the agreement, the Abers also

said that they would assist Vilamoura and the Cornas in a malpractice action against the lawyer who filed the lien.

{¶ 4} Following the final pretrial, the parties began exchanging drafts of the agreement. At some point, the Abers' lawyer thought there was inadequate consideration to release Mrs. Corna. He therefore inserted a clause that would make her responsible for the $100,000 if Vilamoura and Mr. Corna did not pay it. Shortly thereafter, the Cornas hired a new lawyer, and progress on the written agreement stopped. The parties later began negotiating different settlement terms but were unable to come to an agreement. After those discussions failed, the Abers moved the court to enforce the oral settlement agreement and for sanctions. Vilamoura and the Cornas opposed the motion, arguing that there was no agreement because there was no meeting of the minds about Mrs. Corna's obligations. They also argued that even if there was an agreement, it was invalid because the Abers had committed fraud. Specifically, they noted that the Abers had argued that because of the lien, Mr. Aber had had to withdraw $80,000 from a retirement account. They argued that it was improper for the Abers to list the withdrawal as damages because Mr. Aber actually withdrew the money several months before Vilamoura filed the lien.

{¶ 5} The trial court held a hearing on the Abers' motion to enforce settlement, which the Cornas did not attend. The court heard testimony from the Abers' lawyer, Mr. Aber, and the lawyers who had represented Vilamoura and the Cornas at the final pretrial. It concluded that there was a valid settlement agreement and that Vilamoura and Mr. Corna had acted in bad faith in preventing the parties from performing on it. It ordered Vilamoura and Mr. Corna to pay the Abers $100,000 plus interest, attorney fees, expenses, and costs. It also ordered Vilamoura and Mr. Corna to fix the house's defects, construct a screened porch, and install a storm door. Vilamoura and Mr. Corna have appealed, assigning three errors. The Abers have cross-appealed, assigning one error regarding whether the trial court should have ordered sanctions against Mrs. Corna as well.

## JURISDICTION

{¶ 6} As a preliminary matter, the Abers argue that this court does not have jurisdiction to consider Vilamoura and Mr. Corna's appeal, because they filed a notice of appeal from the trial court's June 10, 2008 order but have directed their assignments of error to the court's February 11, 2008 order. Vilamoura and Mr. Corna allege that they moved to amend their notice of appeal to include the February 11, 2008 order and argue that this court should grant their motion.

{¶ 7} Although it appears that Vilamoura and Mr. Corna served the Abers with a motion to modify the notice of appeal and filed a copy of it with the trial court, they did not file their motion with this court. Nevertheless, it is not necessary for Vilamoura and Mr. Corna to amend their notice of appeal to include the February 2008 order. Although App.R. 3(D) provides that a notice of appeal " 'shall designate the judgment, order, or part thereof appealed from,' " it "does not require an appellant to separately identify each interlocutory order issued prior to a final judgment." *Beatley v. Knisley,* 183 Ohio App.3d 356, 2009-Ohio-2229, 917 N.E.2d 280, at ¶ 9, quoting App.R. 3(D). "Interlocutory orders * * * are merged into the final judgment. Thus, an appeal from the final judgment includes all interlocutory orders merged with it * * *." *Grover v. Bartsch,* 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, at ¶ 9; see also *Handel v. White,* 9th Dist. No. 21716, 2004-Ohio-1588, 2004 WL 625681, at ¶ 8. Because the February 2008 order was an interlocutory order, rather than the final judgment of the trial court, Vilamoura and Mr. Corna may challenge the trial court's February 2008 order even though they identified only its June 2008 order in their notice of appeal.

## SETTLEMENT AGREEMENT

{¶ 8} Vilamoura and Mr. Corna's first assignment of error is that the trial court incorrectly found that there was a meeting of the minds regarding the terms of the settlement agreement. The court found that "negotiations reached a point where a mutual assent had been expressed orally to settle the litigation." It determined that "an oral agreement was entered into between the parties * * * and that the terms of the agreement can be determined with sufficient particularity to enforce the agreement." It therefore granted the Abers' motion to enforce settlement.

{¶ 9} "It is preferable that a settlement be memorialized in writing * * *. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 15. " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration * * *, a manifestation of mutual assent and legality of object and of consideration.' " Id. at ¶ 16, quoting *Perlmuter Printing Co. v. Strome Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414.

{¶ 10} "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16. "Whether that has occurred is a question of

fact to be determined from all the relevant facts and circumstances." *Garrison v. Daytonian Hotel* (1995), 105 Ohio App.3d 322, 325, 663 N.E.2d 1316.

{¶ 11} Vilamoura and Mr. Corna argue that there is no evidence that the parties agreed upon Mrs. Corna's role in the alleged agreement. According to them, the evidence shows that the Abers believed that Mrs. Corna had obligations under the agreement, while they thought that she did not. They rely on the fact that the Abers' lawyer drafted a proposed agreement that made Mrs. Corna responsible for the $100,000 if Vilamoura and Mr. Corna did not pay it.

{¶ 12} Vilamoura and Mr. Corna's argument, essentially, is that the trial court's finding that there was an agreement was against the manifest weight of the evidence. In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 26, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in *Wilson*, the standard applicable in civil cases "was explained in *C.E. Morris Co. v. Foley Constr. Co.* [1978], 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578." Id. at ¶ 24. The "explanation" in *C.E. Morris* was that " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " Id., quoting *C.E. Morris Co.*, 54 Ohio St.2d at 279, 8 O.O.3d 261, 376 N.E.2d 578; but see *Huntington Natl. Bank v. Chappell*, 183 Ohio App.3d 1, 2007-Ohio-4344, 915 N.E.2d 665, at ¶ 17–75 (Dickinson, J., concurring).

{¶ 13} The Abers' lawyer testified that at the final pretrial, the parties agreed that Vilamoura and Mr. Corna would pay the Abers $100,000 in two installments, Vilamoura and the Cornas would take care of a list of repairs identified by a housing inspector, the settlement would be confidential, and Vilamoura and the Cornas would provide the Abers with a screened-in porch and storm door. Regarding Mrs. Corna, he said that the Cornas wanted her "off the obligation to pay the money" and the Abers said "that's fine." He said that the parties agreed that they would draw up a note regarding the $100,000 and Mrs. Corna would not be on it. The lawyer who represented Vilamoura at the time of the final pretrial substantially agreed with the Abers' lawyer, testifying that he, the Abers' lawyer, and the Cornas' lawyer told the trial court that "[t]he case was getting resolved" and "that they were going to draft up a settlement agreement." He said that Vilamoura agreed to pay the Abers $100,000, which would be secured by a promissory note that only Mr. Corna would be on. He also said that the list of repairs would be completed and Vilamoura would provide the Abers with a screened-in porch and storm door. The lawyer who represented the Cornas at the final pretrial did not testify.

{¶ 14} The Abers' lawyer also testified that after the final pretrial, he and Vilamoura's lawyer exchanged drafts of a note and written settlement agreement. He said that Vilamoura's lawyer wrote the first draft of the settlement and he wrote the first draft of the note. He said that he suggested several modifications to the settlement draft that Vilamoura's lawyer sent him. He said that he added a clause that provided assurances that Vilamoura and the Cornas would not file bankruptcy or transfer assets. He said that he also added a clause providing that if there were any disputes over the agreement, the loser would pay the winner's attorney fees. He further added a clause providing that the trial court would retain jurisdiction in the event of any dispute. Finally, he said that he "assumed that [the Abers] would need to have consideration for [Mrs. Corna's] release," so he changed the agreement "to say * * * that if [Mr. Corna] and Vilamoura somehow defaulted * * * then she would pay."

{¶ 15} The settlement agreement that Vilamoura's lawyer drafted provided that the Cornas would release any and all claims that they had against the Abers. Accordingly, it already contained adequate consideration to support the release of Mrs. Corna from any obligation to pay the Abers. Although the Abers' lawyer may have become confused about that issue when the parties were exchanging drafts, it does not mean that they did not have a meeting of the minds regarding the terms of the settlement at the time they told the court that they had an oral agreement. There was competent and credible evidence presented by the Abers' and Vilamoura's lawyers to support the trial court's finding that the parties had orally agreed to settle and that the terms of the settlement could be determined with sufficient particularity. Vilamoura and Mr. Corna's first assignment of error is overruled.

## FRAUDULENT INDUCEMENT

{¶ 16} Vilamoura and Mr. Corna's second assignment of error is that the trial court incorrectly found that the Cornas had not been fraudulently induced into entering into the settlement agreement. They argue that the Abers misrepresented their slander-of-title damages, inducing them to settle.

{¶ 17} To prove fraud in the inducement, Vilamoura and Mr. Corna had to "prove that the [Abers] made a knowing, material misrepresentation with the intent of inducing [their] reliance, and that [they] relied upon that misrepresentation to [their] detriment." *ABM Farms Inc. v. Woods* (1998), 81 Ohio St.3d 498, 502, 692 N.E.2d 574. The trial court found that there was no evidence that Vilamoura and the Cornas relied on the Abers' misrepresentations.

{¶ 18} Vilamoura and Mr. Corna argue that the trial court overlooked Mr. Aber's interrogatory responses, Mr. Aber's affidavit, the Abers' brief in opposi-

tion to their motion for summary judgment, and the testimony of the Abers' lawyer at the hearing. In the interrogatory responses, the affidavit, and the opposition brief, the Abers wrote that the lien made the remainder of their construction loan inaccessible. Consequently, they had to withdraw $80,000 from Mr. Aber's retirement account to finish constructing the house. In those documents, the Abers alleged that they not only incurred tax penalties for making the withdrawal but lost whatever earnings they could have made on the $80,000. The Abers' lawyer testified at the hearing that Mr. Aber made the withdrawal "because of the slander of title."

{¶ 19} Vilamoura and Mr. Corna argue that the Abers' damage claim was fraudulent because Mr. Aber withdrew the $80,000 before Vilamoura obtained the lien. As the trial court noted, however, Vilamoura and the Cornas did not present any evidence that they relied on the Abers' claim in deciding whether to settle. Furthermore, as the trial court also noted, the Abers presented evidence that Vilamoura and the Cornas knew or should have known several months before the final pretrial conference that the withdrawal happened before the lien. The Abers' lawyer testified that in October 2006, he gave Vilamoura and the Cornas a report that indicated that Mr. Aber withdrew the money from his retirement account in 2004. Vilamoura did not obtain the lien until July 2005. Vilamoura's former lawyer admitted that he had a copy of the report at the time of Mr. Aber's deposition in November 2006, which was three months before the final pretrial. Accordingly, the trial court's finding that Vilamoura and the Cornas did not rely on the Abers' alleged misrepresentation is not against the manifest weight of the evidence. Vilamoura and Mr. Corna's second assignment of error is overruled.

## SANCTIONS

{¶ 20} Vilamoura and Mr. Corna's third assignment of error is that the trial court incorrectly ordered sanctions against them. The Abers' cross-appeal assignment of error is that the trial court incorrectly refused to order sanctions against Mrs. Corna. Because these assignments of error involve similar questions, this court will consider them together.

{¶ 21} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, at ¶ 7, quoting *Nottingdale Homeowners' Assn. Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33, 514 N.E.2d 702. "However, there are exceptions to this rule." Id. Attorney fees may be awarded if "the party against whom the fees are taxed was found to have acted in bad

faith." *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 369, 21 O.O.3d 228, 423 N.E.2d 1099.

{¶ 22} The trial court ordered Vilamoura and Mr. Corna to pay the Abers' attorney fees because it found that they "purposefully held up the settlement agreement in an attempt to force [the Abers] to prove their legal malpractice claims against their first attorney." The Abers presented evidence that Vilamoura's lawyer e-mailed the first draft of a written agreement to their lawyer on February 20, 2007. On March 12, 2007, the Abers' lawyer e-mailed Vilamoura's lawyer his revisions, which included adding language that made Mrs. Corna responsible for the $100,000 if Vilamoura and Mr. Corna did not pay it. On March 16, 2007, Vilamoura's lawyer responded, arguing that the agreement had nothing to do with Mrs. Corna and alleging that the Abers were trying to change the terms. The Abers' lawyer responded that same day, writing that he was not trying to change the agreement's terms, just trying to clarify Mrs. Corna's consideration. He wrote that if Vilamoura's lawyer thought he had incorrectly drafted any part of the agreement, he was sure they could work it out.

{¶ 23} The Abers' lawyer said that following his e-mail, he waited for another draft and contacted Vilamoura's lawyer a couple of times asking where it was. On March 30, 2007, the Abers moved to enforce the agreement. The Abers' lawyer said that he eventually received an e-mail from a different lawyer explaining that Vilamoura had fired their lawyer. On April 17, 2007, he received a draft of a settlement agreement from the new lawyer, which contained, for the first time, a "malpractice suit" provision. He said that the malpractice-suit provision indicated that a material inducement for Vilamoura and Mr. Corna to enter into the settlement had been the Abers' agreement to cooperate in a malpractice suit. The Abers' lawyer said that the Abers had no problem agreeing to cooperate with the malpractice suit but were "not going to agree that that was a material inducement because [they did not] know what [Vilamoura and the Cornas'] inducements were." The e-mail that Vilamoura's new lawyer sent with the revised settlement draft also provided that the Abers had to "immediately produce all documentation relating to the withdrawal from the 401(k)." According to the Abers' lawyer, on May 3, 2007, he sent Vilamoura's new lawyer additional revisions to the agreement, but did not receive a response. He said the lawyer called him a few days later and asked whether the Abers would reconsider the settlement. He perceived the offer to renegotiate "to be [Vilamoura and Mr. Corna's] unwillingness to perform the settlement." He said he thought that the parties had come to a new agreement, but Vilamoura and Mr. Corna refused to perform it. The Abers, therefore, moved to enforce the agreement again.

{¶ 24} Vilamoura and Mr. Corna argue that they had a good faith belief that there was no meeting of the minds regarding Mrs. Corna's obligations under the agreement. The only evidence that supports their argument is the settlement draft prepared by the Abers' lawyer that made Mrs. Corna liable for the $100,000 if Vilamoura and Mr. Corna did not pay it. Within an hour of being informed by Vilamoura's lawyer that he was incorrect about adding that term to the agreement, however, the Abers' lawyer wrote that he was willing to remove it. He told Vilamoura's lawyer, "If you think we over drafted some portion of the agreement, then tell me what it is and I'm sure we can work it out. Just send it back to me with whatever you want taken out and we'll go from there. I just want to get the agreement signed by everyone as soon as possible."

{¶ 25} Despite indicating his intent to work out any issues with the settlement language, the Abers' lawyer did not receive proposed changes from Vilamoura or Mr. Corna for over a month. Instead of continuing to work on a written agreement, Vilamoura terminated its lawyer, asked the Abers to renegotiate, and began demanding that the Abers immediately provide assistance with the Cornas' malpractice action. The trial court, therefore, properly concluded that Vilamoura and Mr. Corna had acted in bad faith. Their third assignment of error is overruled.

{¶ 26} Regarding the Abers' cross-appeal, it was reasonable for the trial court to conclude that because Vilamoura and Mr. Corna were the only parties responsible for paying the $100,000 and fixing the Abers' home, they were the ones acting in bad faith in holding up the written settlement agreement. Accordingly, the court properly concluded that it should not order sanctions against Mrs. Corna. The Abers' cross-appeal assignment of error is overruled.

## CONCLUSION

{¶ 27} The trial court's finding that there was a valid settlement agreement and that the Abers did not fraudulently induce Vilamoura and the Cornas into that agreement is not against the manifest weight of the evidence. The trial court properly ordered sanctions against Vilamoura and Mr. Corna but not against Mrs. Corna. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

CARR and BELFANCE, JJ., concur.