[Cite as *O'Connor v. Fairview Hosp.*, 2013-Ohio-1794.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 98721

---

# JOSEPH O'CONNOR

### PLAINTIFF-APPELLEE

vs.

# FAIRVIEW HOSPITAL, ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-754363

**BEFORE:** Jones, J., Celebrezze, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 2, 2013

**ATTORNEYS FOR APPELLANT FAIRVIEW HOSPITAL**

Clifford C. Masch
Marc W. Groedel
Reminger Co., L.P.A.
101 West Prospect Avenue
Suite 1400
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEES**

**For Joseph O'Connor**

Daniel J. Ryan
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**For Dr. Steven Ira Zelin**

Donald H. Switzer
Bonezzi, Switzer, Murphy, Polito, Hupp
1300 East Ninth Street
Suite 1950
Cleveland, Ohio 44114

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Fairview Hospital, appeals from the trial court's judgment in favor of plaintiff-appellee, Joseph O'Connor, and against the hospital. The hospital also appeals from the trial court's judgment denying its motion for judgment notwithstanding the verdict or new trial. Additionally, the hospital challenges the trial court's decision to allow the testimony of O'Connor's expert witness, Dr. Alexander Weingarten. We affirm.

## I. Procedural History

{¶2} O'Connor initiated this medical malpractice action against the hospital and defendant-appellee, Dr. Steven Zelin, as a result of an injury he sustained after having open heart surgery at the hospital. Prior to trial, the hospital filed a motion in limine to exclude the testimony of O'Connor's expert witness, Dr. Weingarten. The trial court denied the motion.

{¶3} Because of a heavy trial schedule, the case was transferred from the originally-assigned judge to a visiting judge. The matter proceeded to a jury trial with the visiting judge adhering to the prior ruling of the original judge regarding Dr. Weingarten's testimony.

{¶4} At the conclusion of O'Connor's case, the defense made a motion for a directed verdict, which the trial court denied. The defense presented its case, and after resting, renewed its motion for a directed verdict, which the trial court again denied.

After its deliberations, the jury returned a verdict in favor of Dr. Zelin and against O'Connor, and a verdict in favor of O'Connor and against the hospital. The hospital filed a motion for judgment notwithstanding the verdict or for a new trial. The trial court denied the motion and reduced the jury's verdict to judgment.

## II. Facts

{¶5} The record shows that on October 26, 2007, O'Connor went to Fairview Hospital's emergency room because he was coughing uncontrollably and having difficulty breathing. The examining physicians suggested that O'Connor undergo a diagnostic heart catheterization; O'Connor agreed. The procedure revealed that O'Connor had three blockages in his heart. The physicians told him that he needed open heart surgery immediately. O'Connor consented, and the surgery was performed the following day.

{¶6} Dr. Indegit Gill performed the surgery and Dr. Zelin was the anesthesiologist. Several other people were also present in the operating room, including: nurse Audra Avile, Dr. Otaki (Dr. Gill's fellow), a physician's assistant, and Dr. Gamaledin, who "closed" as the anesthesiologist after Dr. Zelin had left. The surgery lasted approximately five hours.

{¶7} The open heart surgery included a procedure known as median sternotomy, which is the opening and retracting of the chest to allow access to the heart. Median sternotomy is a potential cause of a brachial plexus injury.

{¶8} O'Connor testified that when he awoke from the surgery, his right hand and arm felt numb and he was not able to move them. His first thought was that he had

suffered a stroke. O'Connor further testified that his right hand and arm were black and blue and swollen. O'Connor described the pain to his right hand and arm, on a level of one to ten, with ten being the worst, as fluctuating between eight and ten.

{¶9} Shortly after the surgery, O'Connor's family members were allowed to visit him. The family saw that O'Connor's right hand was swollen and discolored, and that he appeared to be in pain when he tried to move his right arm.

{¶10} After complaining to Dr. Gill about the pain, O'Connor saw Dr. Peter Bamdakidis, a neurologist, and began physical therapy for the hand for the month that he was hospitalized. O'Connor testified that his hand and arm had still not improved during that time.

{¶11} O'Connor further testified that his hand and arm had still not improved throughout the remainder of 2007 and into 2008, so he went to see another neurologist, Dr. William Bauer. In October 2008, Dr. Bauer diagnosed O'Connor as having a brachial plexus injury and as suffering from chronic regional pain syndrome. According to Dr. Bauer, O'Connor's injury is permanent.

{¶12} O'Connor's expert, Dr. Weingarten, was a board certified anesthesiologist. Dr. Weingarten was of the opinion that O'Connor's injury was the result of undue external pressure applied to O'Connor's upper extremity during the surgery. The pressure, he opined, occurred through one of two mechanisms, or a combination of both. The first possible mechanism of the undue pressure was from inadequate or improper padding around O'Connor's right arm during the surgery. The second possible mechanism of the

undue pressure was from someone leaning against O'Connor's right upper extremity during the surgery. Dr. Weingarten was of the opinion that either of these mechanisms fell below the standard of care.

{¶13} The hospital, on the other hand, presented expert testimony that O'Connor's injuries were caused internally, which, as mentioned, is a known complication of open heart surgery.

{¶14} Dr. Weingarten, O'Connor's expert, did not believe that O'Connor's injuries were caused as suggested by the defense because generally such injuries resolve, but O'Connor's injury is permanent. The defense experts likewise testified that such an injury would generally resolve and not be permanent.

{¶15} O'Connor testified that prior to having the surgery, he did not have any problems with his right hand or arm. He further testified that, although his right hand and arm have improved a little over the years, at the time of trial he was still in "tremendous pain on a 24/7 basis."

### III. Law and Analysis

{¶16} The hospital has assigned the following as errors for our review:

[I.] The trial court erred when it permitted appellee's expert to testify on the issue of proximate cause when the opinion could not be stated to the requisite degree of medical certainty.

[II.] The trial court erred in failing to grant a directed verdict to appellant on the basis that appellee failed to present competent credible expert testimony on the issue of proximate cause.

[III.] The trial court erred in failing to grant appellant's motion for JNOV.

[IV.] The jury verdict against Fairview was against the manifest weight of the evidence.

## A. Notice of Appeal

**{¶17}** We initially consider O'Connor's contention that the first two assignments of error are not properly before this court because the judgments relative to the rulings challenged in those assignments were neither attached to, nor mentioned in, the hospital's notice of appeal.

**{¶18}** App.R. 3(D) provides that the notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."

**{¶19}** The Ninth Appellate District addressed the issue that arises when a party appeals from a final judgment and challenges not only the final judgment, but also interlocutory orders that were made during the trial court proceeding. The court stated the following:

> Although Rule 3(D) of the Ohio Rules of Appellate Procedure provides that a notice of appeal "shall designate the judgment, order, or part thereof appealed from," it "does not require an appellant to separately identify each interlocutory order issued prior to a final judgment." *Beatley v. Knisley*, 10th Dist. No. 08AP-696, 183 Ohio App.3d 356, 2009-Ohio-2229, at ¶9, 917 N.E.2d 280 (quoting App.R. 3(D). "Interlocutory orders * * * are merged into the final judgment * * * [t]hus, an appeal from the final judgment includes all interlocutory orders merged with it." *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, at ¶9, 866 N.E.2d 547; *see also Handel v. White*, 9th Dist. No. 21716, 2004-Ohio-1588, at ¶8.

*Aber v. Vilamoura, Inc.*, 184 Ohio App.3d 658, 2009-Ohio-3364, 922 N.E.2d 236, ¶ 7 (9th Dist.2009).

**{¶20}** Here, the hospital did not identify in its notice of appeal, and attach to the notice, the judgments denying its motion to exclude Dr. Weingarten's testimony and motion for a directed verdict. Those judgments were interlocutory, rather than the final judgment of the trial court. Thus, in light of the above, the hospital may challenge those judgments, which merged into the final judgment from which it appealed.

**{¶21}** We, therefore, proceed to address all of the hospital's assignments of error on the merits.

B.    Admission of O'Connor's Expert

**{¶22}** In the hospital's first assignment of error, it challenges the trial court's decision to allow the testimony of Dr. Weingarten.

**{¶23}** A trial court is vested with broad discretion in the admission and exclusion of evidence and a reviewing court will not reverse a trial court's judgment for failure to admit or exclude evidence unless the trial court has clearly abused its discretion and the complaining party has suffered material prejudice. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 659 N.E.2d 1056 (1991). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶24}** In order to establish a cognizable claim of medical malpractice, a plaintiff must show the existence of standard of care within the medical community, breach of the standard of care by the defendant, and proximate cause between the medical negligence

and the injury sustained. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976).

**{¶25}** In *Bruni*, the Ohio Supreme Court explained a plaintiff's burden as follows:

Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or commission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things. *Ault v. Hall* (1928), 119 Ohio St. 422, 164 N.E. 518 (Citations omitted.)

*Id.* at 131.

**{¶26}** Expert testimony is generally required to establish that a physician was unskilled or negligent. *Id.* at 130. Expert testimony is also required to establish a causal link between the alleged negligent act and the injury sustained. *Id.*

**{¶27}** It is well settled that the establishment of proximate cause through

medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence. *See Cooper v. Sisters of Charity*, 27 Ohio St.2d [242,] 252, [272 N.E.2d 97 (1971)]. Opinions expressed with a lesser degree of certainty must be excluded as speculative. (Footnote omitted.)

*Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 369, 504 N.E.2d 44 (1986).

**{¶28}** According to the hospital, Dr. Weingarten offered "alternative theories" of causation: (1) the "improper leaning" theory, which was directed against the hospital, and (2) the "improper padding" theory, which was directed against Dr. Zelin. The hospital

contends that Dr. Weingarten was "unable to express an opinion to the requisite degree of probability that any alleged incident of 'improper leaning' by an unknown member of the Fairview Hospital staff was a causative factor in Mr. O'Connor's brachial plexus injury." We disagree.

{¶29} At the beginning of his trial testimony, Dr. Weingarten was asked if the opinions he would be giving "as to the treatment and care received by Joseph O'Connor including the cause of his injuries, and what brought it about * * * would * * * [be] base[d] * * * on reasonable medical probability. In other words, more likely than not." The doctor responded "[y]es."

{¶30} Dr. Weingarten also testified that if he stated it was his opinion that treatment received by O'Connor fell below the required standard of care, that would mean the definition of standard of care as stated in *Bruni* and *Ault*, *supra*. Moreover, the doctor testified that when asked about the relationship between O'Connor's brachial plexus injury and the surgery, his opinions would be based on direct and proximate cause.

{¶31} In regard specifically to the hospital, Dr. Weingarten testified that his opinions of its standard of care would be measured

> against the treatment that is to be provided to a patient by a hospital through its employees, or agent physicians, or others employed by the defendant hospital and using their ordinary skill, care, and diligence in treating that patient that would be provided in the like or similar situation that Mr. O'Connor found himself when the * * * operation was performed on him or under the general anesthetic to him by the defendant, Steven Ira Zelin, and Fairview Hospital.

{¶32} The hospital contends that Dr. Weingarten's testimony that there were "two

possibilities" about how O'Connor's injury occurred did not rise to the requisite degree of certainty because he was unable to say that one of the possibilities in and of itself was the proximate cause of O'Connor's injury.

{¶33} Dr. Weingarten's testimony was that external pressure was applied to O'Connor's right hand and wrist area during the surgery and that that fell below the standard of care and caused his injury. The doctor's testimony about improper leaning and improper padding were his theories about the mechanism of how the external pressure was applied. But he testified that his opinion that external pressure was applied to O'Connor's right wrist and hand area during the surgery was based on a reasonable degree of medical probability. Moreover, he ruled out the defendants' theory of the cause of O'Connor's injury.

{¶34} Thus, Dr. Weingarten's testimony was not in the nature of alternative theories as contended by the hospital. Further, the hospital's citation to the Ohio Supreme Court's decision in *Stinson v. England*, 69 Ohio St.3d 451, 1994-Ohio-35, 633 N.E.2d 532, for its contention that alternative theories are only permissible by the defense is not applicable in this case.

{¶35} In *Stinson*, the plaintiff-mother sued the doctor-defendant for medical malpractice after her daughter was born with a severe mental impairment. At a jury trial, the mother presented expert testimony that the doctor should have administered a test during the mother's pregnancy to determine if the baby was in distress due to placental insufficiency.

**{¶36}** The doctor-defendant presented expert testimony that the impairment the baby suffered could have been caused by three events: (1) maternal hypotension, (2) placental insufficiency, or (3) compression of the umbilical cord. Of the possibilities, the defense expert testified that the "most likely" cause of the injury was the compression of the umbilical cord.

**{¶37}** The jury returned a general verdict in favor of the doctor, concluding that the doctor had been negligent in failing to properly monitor fetal movement, but that the negligence was not the proximate cause of the injuries to the baby. The Second Appellate District affirmed the trial court's judgment. *Stinson v. England*, 2d Dist. No. 13073, 1992 Ohio App. LEXIS (Oct. 5, 1992).

**{¶38}** The Ohio Supreme Court reversed the judgment of the court of appeals and remanded for a new trial. The court held that "expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent bears the burden of persuasion with respect to the issue." *Id.* at paragraph one of the syllabus.

**{¶39}** We do not find that the court held, as the hospital contends, that alternative theory testimony is a "limited exception" that is only permitted for a defendant's "attack on the prima facie medical negligence case established by the plaintiff." Although the situation in *Stinson* involved alternative theories by the defense, the very language in *Stinson* suggests that a plaintiff may advance alternative causes so long as it is expressed as a probability: "expert opinion regarding a causative event, *including alternative*

*causes*, must be expressed in terms of probability *irrespective of whether the proponent bears the burden of persuasion with respect to the issue*." (Emphasis added.) *Id.*

{¶40} Here, Dr. Weingarten did not testify as to an alternative theory of the cause of O'Connor's injury. Rather, he testified he was of the opinion the injury was caused by external pressure that was applied to O'Connor's right hand and wrist area during the surgery. He testified that his opinion was to a reasonable degree of medical certainty and that the application of such pressure fell below the standard of care.

{¶41} Because Dr. Weingarten was obviously not present during the surgery, he opined that there were two ways in which the pressure could have been applied: improper padding or improper leaning. But in any event, however the pressure was applied, Dr. Weingarten testified, to a reasonable degree of medical certainty, that it was applied externally, that such an exertion of pressure was below the standard of care, and that it was the proximate cause of O'Connor's injury.

{¶42} The hospital further contends that Dr. Weingarten testified that the likelihood of a hospital staff member improperly leaning against a patient during surgery would be a "rare occurrence." We disagree with that characterization of the testimony. The doctor testified that there are always concerns about operating room personnel leaning against a patient during surgery. He testified that there are areas of the body that are of particular concern — knees, feet, and eyes — but that someone applying undue pressure to the eyes would be a "rare circumstance."

{¶43} In light of the above, the trial court did not abuse its discretion in allowing

Dr. Weingarten's testimony.    Appellant's first assignment of error is overruled.

C.    Motions for Directed Verdict and JNOV

{¶44} For its second assigned error, the hospital contends that the trial court erred by denying its motion for a directed verdict.   For its third assigned error, the hospital contends that the trial court erred by denying its motion for JNOV.

{¶45} Our review of the grant or denial of a motion for directed verdict or a motion for judgment notwithstanding the verdict is de novo.   *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, ¶ 14 (8th Dist.); *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90, 509 N.E.2d 399 (1987).

{¶46} Civ.R. 50 sets forth the standards for granting a motion for a directed verdict and a motion for judgment notwithstanding the verdict:

> When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

Civ.R. 50(A)(4).

> Whether or not a motion to direct a verdict has been made or overruled * * * a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned, such party, * * * may move for judgment in accordance with his motion.   A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

Civ.R. 50(B).

{¶47} In deciding a motion for a directed verdict or a motion for judgment

notwithstanding the verdict, the trial court must construe the evidence most strongly in favor of the nonmoving party. *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 137, 477 N.E.2d 1145 (1985). Thus, the trial court must submit an issue to the jury if there is evidence that, if believed, would permit reasonable minds to come to different conclusions. *TLT-Babcock, Inc. v. Service Bolt & Nut Co.*, 16 Ohio App.3d 142, 143, 474 N.E.2d 1223 (9th Dist.1984).

{¶48} Upon review, reasonable minds could reach different conclusions as to what caused O'Connor's injury. The expert witnesses offered opposing opinions on what caused O'Connor's injury. Thus, it was within the jury's province to weigh the evidence and decide which expert it believed. Accordingly, the trial court did not err in denying the hospital's motion for a directed verdict.

{¶49} In regard to its motion for judgment notwithstanding the verdict, the hospital contends that the visiting judge erred in applying the doctrine of "law of the case" in denying the motion. The court stated the following in denying the motion:

> The policy and practice of the Cuyahoga County Common Pleas Court is that all motions are to be ruled upon prior to transfer to a visiting judge. The visiting judge does not sit in the capacity of an appellate court. In this case, the trial court denied the defendant's motion in limine to preclude the testimony of Dr. Weingarten. This court is compelled to abide by that ruling. Due to the fact that Dr. Weingarten's expert testimony was permitted, the court denies the motions JNOV and the companion request for a new trial.

{¶50} This court has addressed the law-of-the-case doctrine in cases where rulings were made by the trial court before the case was transferred to a visiting judge, stating that, "[a]lthough judges assigned to preside over trials may in practice decline to disturb

rulings made by the originally-assigned judge, the law of the case doctrine is not a legal basis for so doing." *Schultz v. Duffy*, 8th Dist. No. 93215, 2010-Ohio-1750, ¶ 11. Thus, this court held that "there is no rule of court that prohibits a visiting judge assigned to preside over a trial from revisiting rulings in limine made by the originally-assigned judge." *Id.* at ¶ 13.

{¶51} This court explained that as a "matter of practice," visiting judges "almost always decline to revisit pretrial evidentiary rulings." *Id.* "While visiting judges are not forbidden from reconsidering interlocutory rulings made by the originally-assigned judge, they very sensibly defer to pretrial rulings. But that deference should not be confused with saying that all pretrial rulings are inviolable." *Id.* O'Connor disagrees with the hospital's characterization that the visiting judge relied on the law-of-the-case doctrine in denying the motion for judgment notwithstanding the verdict. Although the visiting judge did not use the words "law of the case," a fair reading of the judgment, with use of the words "policy" and "compelled," indicates that the court felt it was without discretion to disturb the ruling of the original judge.

{¶52} We reiterate here what this court held in *Schultz*: that visiting judges may, in their discretion, defer to the rulings of the original judge, but are also not prohibited from exercising discretion to revisit prior rulings. That being said, however, for the reasons set forth in our resolution of the first assignment of error, we find that Dr. Weingarten's testimony was properly allowed. Thus, the trial court properly denied the hospital's motion for judgment notwithstanding the verdict.

**{¶53}** In light of the above, the second and third assignments of error are overruled.

D.    Manifest Weight of the Evidence

**{¶54}** In *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court described manifest weight of the evidence as follows:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Id.* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶55}** The *Thompkins* standard of review for manifest weight of the evidence applies in civil cases.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.

**{¶56}** In this assignment of error, the hospital contends that Dr. Weingarten's testimony was not permissible expert testimony under Evid.R. 702 and 703.   Specifically, the hospital contends that the doctor's testimony was not based on reliable, scientific, technical, or other specialized information as required under Evid.R. 702, and that his opinion was not based on facts and data either perceived by him or admitted into evidence as required under Evid.R. 703.

**{¶57}** Dr. Weingarten's testimony was based upon the specialized knowledge of an anesthesiologist, and his opinion was based on facts and data admitted into evidence. Thus, his testimony was admissible expert testimony under Evid.R. 702 and 703.

**{¶58}** In sum, the jury was presented with competing opinions as to the cause of O'Connor's injuries. Although we consider credibility in a manifest weight challenge, it is primarily within the jury's province to make determinations as to the weight of the evidence and the credibility of witness testimony. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Upon review, we do not find anything so incredible about the jury's determination and, therefore, decline to disturb it.

**{¶59}** In light of the above, the fourth assignment of error is overruled.

**{¶60}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR